Filed 2/25/13  P. v. Huerta CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>CAROLYN HUERTA,<br><br>        Defendant and Appellant. | H037152<br>(Monterey County<br> Super. Ct. No. SS0806070) |

Defendant Carolyn Huerta appeals from a judgment of criminal conviction, contending that (1) sentence on two of the three charges against her should have been stayed under Penal Code section 654, subdivision (a) (§ 654(a)); (2) she is entitled to credit for presentence confinement at the rate prescribed by the October 2011 amendments to Penal Code section 4019; and (3) one of the fines against her should be stricken as duplicative of a fine previously imposed.  Respondent concedes the first point as to one charge, but not the other.  Defendant in turn concedes that her second claim of error is foreclosed by the California Supreme Court's decision in *People v. Brown* (2012) 54 Cal.4th 314.  As to the remaining points of contention, we conclude that the sentence on the remaining charge should also have been stayed under section 654(a), and that the judgment must be corrected in three respects with respect to the fines imposed.   We will direct appropriate modifications of the judgment and affirm the judgment as modified.

BACKGROUND

A complaint filed on January 8, 2008, charged defendant with assault by force likely to cause great bodily injury (Pen. Code, § 245, subd. (a)(1)), grand theft from the person (Pen. Code, § 487, subd. (c)), and battery (Pen. Code, § 242). It was further alleged that defendant committed the charged crimes "for the benefit of, at the direction of, or in association with NORTENO CRIMINAL STREET GANG, with the specific intent to promote, further, or assist in any criminal conduct by gang members, in violation of Penal Code Section 186.22(b)(1)." Also charged in these counts, and two others, was a codefendant, Joel Hernandez.

At the preliminary hearing on April 28, 2008, a police officer testified that the person identified as Victim 1 ("Jane Doe" in the pleadings; hereafter Doe) told her that while standing outside Jaime's Bar in Salinas on the evening of October 15, 2007, she was approached by defendant and another woman, who asked where she was from. Doe responded that she was from the Los Angeles area. The women told her to leave the area. When she failed to do so, they "began to hit her . . . to the point where she fell to the ground," whereupon they "began kicking her." Doe believed she lost consciousness at one point. She described defendant as her main attacker. She was unable to identify the other assailant or describe her beyond her sex and the color of her clothing. She also told the officer that the two women took her cane, which was "blue with some sort of stars and moons on it." Asked whether Doe "need[ed] [the] cane, or was it just an ornament," the officer testified, "I believe that she used it to assist her in walking. She had some problems walking." However she could not recall whether Doe walked with a limp and did not otherwise disclose the basis for her belief that she needed the cane for mobility.

A male bystander, identified at the preliminary hearing only as Victim 2, also identified defendant as one of the assailants. He told an officer that he witnessed two females punching and kicking Doe "[a]bout her body and head." When he attempted to

2

intervene, he was approached by codefendant Hernandez, who "grabbed him by the throat and tried to keep him from intervening or assisting Victim 1." Another officer, who described Jaime's Bar as a "known Norteño hangout," testified that after the incident he entered the bar, where he found Hernandez sitting at a table with the stolen cane leaning against the wall about six inches away.

Another officer, who had researched the potential gang affiliations of the two defendants, opined that defendant "is an active participant in the Norteño criminal street gang." He also recounted a recorded telephone conversation between defendant and one Art Marquez, a known Norteño gang member with whom the officer believed defendant had borne children. In the conversation defendant told Marquez that "she was in a fight with a female outside of Jaime's Bar." Some of defendant's companions had asked the victim where she was from; she had replied either "Florencia sur" or "Sureño." Defendant then told the victim "that she needed to get the fuck on and that this wasn't her area." The victim then asked defendant for "permission to use the restroom in the bar," but defendant refused; as she explained to Marquez, the bar was "their area." Defendant said that after entering the bar for a short time, she had returned to find the victim "still outside and . . . being confronted by [defendant's] friends." The friends pointed out to defendant that the victim was a Sureña, which the victim said she had already told defendant. At that, defendant stated, " 'I had to drop her.' " She also took the victim's cane. Although the officer did not so testify at the hearing, the prosecutor's trial brief added the detail, as reported by defendant to Marquez, that after " 'kicking' " the victim's " 'ass back to the bus depot,' " she "noticed the victim's cane and took it and went back inside the bar."

The officer opined that the assault described in the case was gang-related. He confirmed that Jaime's Bar was "frequented by Norteño gang members." He also noted that the assault was preceded by "a direct challenge issue[d] to the victim asking her

3

where she's from."  Such a challenge, he testified, "is most often followed by some sort of act of violence."

The court held defendant to answer on the three charges originally pled against her and also on a fourth charge of participation in a criminal street gang (Pen. Code, § 186.22, subd. (a)).[1]  On May 6, 2008, an information was filed charging defendant with assault by means of force likely to produce great bodily injury (former Pen. Code, § 245, subd. (a)(1); see now § 245, subd. (a)(4)), grand theft from the person (Pen. Code, § 487, subd. (c)); felony battery (Pen. Code, § 242); and felonious participation in a criminal street gang (Pen. Code, § 186.22).

The matter was scheduled to be tried on March 16, 2009.  On that date defendant entered pleas of nolo contendere to the charges of assault with injurious force, grand theft, and gang participation, on the understanding that she would be sentenced to felony probation.  All remaining counts and enhancements were ultimately dismissed.  As contemplated by the conditions on which the plea was made, the court suspended imposition of sentence and placed defendant on probation.  The order placing her probation included directives that she "[p]ay a restitution fine of $600.00 to the State Restitution Fund" under Penal Code section 1202.4, subdivision (b), and that she was subject to "[a]n additional restitution fine in the amount of $600.00. . ., suspended, and not to be paid unless and until probation is revoked and not reinstated.  (PC § 1202.44)."

---

[1]  When the prosecutor mentioned this sixth count near the end of the preliminary hearing, both the court and opposing counsel stated that they had no pleading setting forth such a charge.  The prosecutor alluded to an amended complaint, but no such pleading appears in the file.  The court stated that "had there been alleged Count 6 for 186.22(a) as felony, there's sufficient evidence to hold the defendants to answer . . . that charge as well."  That the court had the power to hold a defendant to answer on a charge not pled in the complaint, but shown by the evidence at the preliminary hearing, is not contested by defendant.  (See Pen. Code, § 872.)

4

On March 17, 2011, the district attorney filed a petition to revoke defendant's probation, alleging that she had violated the prohibition against possessing gang paraphernalia. As recounted in the probation report, the violation consisted of having on her cell phone "several gang pictures, photographs, letters and text messages of and to other Norteño criminal street gang members." The court found that defendant had violated probation. The hearing was combined with a preliminary hearing in a companion case charging defendant with felony obstruction of a police officer. This charge arose from an incident in which defendant falsely answered questions by gang officers concerning her means of transport to the probation department, where she had come to meet with her probation officer. She ultimately entered a plea of nolo contendere to that charge on the understanding that it would be reduced to a misdemeanor at sentencing. She also admitted the probation violation.

On July 13, 2011, the trial court sentenced defendant to 3 years on the charge of assault; 2 years, to be served concurrently, on the charge of grand theft; and 8 months, to be served consecutively, on the charge of felonious gang involvement. The court allowed presentence custody credits of 162 days actually served plus 80 days conduct credits. In its oral pronouncement the court imposed a state restitution fine "$200 for each year of incarceration pursuant to 1202.4(b)," plus "an additional $200 suspended pursuant to 1202.45." In the abstract of judgment these assessments appear as an $800 fine "forthwith" under "PC 1202.4(b)" and another of $800 "per PC 1202.45 suspended unless parole is revoked."

Defendant filed this timely appeal.

### DISCUSSION

#### I. *Penal Code section 654*

Defendant contends that all three of the charges in this matter arose from the same conduct and that sentence on the two lesser charges should therefore have been stayed

5

under Penal Code section 654, subdivision (a), which as pertinent here provides, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." This statute "precludes multiple punishment for a single act or omission, or an indivisible course of conduct." (*People v. Deloza* (1998) 18 Cal.4th 585, 591.) Where a defendant is convicted of two or more charges falling within this description, the court is required to impose sentence on all such charges, but stay execution on all but the charge prescribing the longest term of imprisonment. (*Ibid.*) For these purposes, concurrent sentences constitute multiple punishment, and execution of sentence must be stayed as to all but one of them. (See *ibid.*)

"The divisibility of a course of conduct depends upon the intent and objective of the defendant. If all the offenses are incidental to one objective, the defendant may be punished for any one of them, but not for more than one. On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, the trial court may impose punishment for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct. [Citations.] The principle inquiry in each case is whether the defendant's criminal intent and objective were single or multiple. Each case must be determined on its own facts. [Citations.] The question whether the defendant entertained multiple criminal objectives is one of fact for the trial court, and its findings on this question will be upheld on appeal if there is any substantial evidence to support them. [Citations.]" (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1135-1136.) However a fact necessary to sustain the judgment will be inferred only when "the trier of fact could

6

reasonably deduce" that fact "from the evidence." (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 271.)

Respondent concedes that two of the offenses of which defendant was convicted—assault and participation in a criminal street gang—shared the same criminal objective, such that execution of the sentence on the former must be stayed. The concession is well taken. (See *People v. Mesa* (2012) 54 Cal.4th 191, 197 [trial court erred by not staying sentence on gang participation charge, where underlying shootings also formed basis for assault charges].) Respondent contends, however, that the charge of grand theft from the person could be found to have a distinct criminal objective, i.e., to "thwart the victim's ability to report the attack and obtain help." Respondent states that the record contains substantial evidence to support such a finding, in that Doe "had limited mobility and needed the cane to walk," and the cane had "limited monetary value," rendering it "unlikely that appellant assaulted Doe in order to facilitate theft of the cane."

This treatment erects a straw man, since no one contends, or could plausibly contend, that the assault was intended to facilitate the theft. Rather, as respondent has conceded, the purpose of the assault was to further the interests of the Norteño street gang by brutalizing a Sureño trespasser. The relevant question is whether the theft of the victim's cane had this same purpose, or was accompanied by a distinct criminal intent. We find no basis in this record for a reasonable inference that the theft was intended, as respondent suggests, to prevent or delay apprehension by interfering with the victim's ability to report the assault.

We may assume for purposes of this analysis that Doe used the cane "to assist her in walking," though the officer who so testified failed to articulate any basis for her "belie[f]" to that effect. It hardly follows that the cane was taken to prevent the victim from reporting the crime. Such an intention presupposes that defendant sought to avoid apprehension for her conduct. But that intention is belied by the complete absence of

evidence that defendant made any attempt to elude the police. The only real evidence bearing on the question is an officer's testimony that the victim was still at the scene when she identified defendant as her chief assailant. The prosecution trial brief adds the detail that after the assault, defendant re-entered the bar, taking the cane with her. The probation report is even more explicit, stating that after arriving at the scene and questioning the victim, officers "received information that a female matching the description of one of the [assailants], was sitting inside Jaime's Bar." This is hardly the conduct of a person seeking to avoid capture. Moreover, if defendant's objective was simply to escape the consequences of her conduct she might have been expected to dispose of the cane, which police would otherwise be likely to seize as evidence. Instead officers found the cane in the bar, next to her male codefendant.

A far more likely purpose for the theft, and the only one we find reasonably inferable from this record, is the same one that accompanied the other two charges: to terrorize the victim, and those who might identify with her, in order to assert Norteño suzerainty over the bar and environs. This would appear obvious even without the added fact that, as respondent acknowledges, the cane was blue, a color associated with Sureño affiliation, as red is with Norteño. Respondent asserts that this fact could not establish a gang-related objective because the cane "had no gang markings, and there was no evidence that it was symbolically tied to the rival gang in any way." The second clause is contradicted by the conceded fact that the cane was blue. The first is entirely without record support. At most there was a lack of affirmative evidence that the markings on the cane—"some sort of stars and moons"—had any gang-related significance. No one bothered to ask any of the testifying officers, at least one of whom was apparently viewed as an expert on such matters, whether these markings might be further indicia of gang affiliation. In the absence of such a question—and a negative answer—the record is mute as to whether the cane bore "gang markings." In any event, its color alone was enough to

8

make it an emblematic of the victim's acknowledged gang affiliation. It might therefore be viewed as a worthy trophy of war.

The obvious purpose of the assault was to humiliate the victim as punishment for invading Norteño territory, thereby affirming the gang's dominance over that territory. Taking the cane was simply an additional act of terror. Since the record does not support a *reasonable* inference of the independent purpose posited by respondent, it cannot sustain the separate punishment imposed for the theft charge. Accordingly the sentence on that charge must be stayed.

## II. *Presentence Custody Credits*

Defendant contends that as a matter of equal protection she is entitled to additional credit for presentence confinement under the version of Penal Code section 4019 that took effect on October 1, 2011. She acknowledges that our adoption of this argument is foreclosed by *People v. Brown, supra,* 54 Cal.4th 314, but stands on the objection to preserve such federal remedies as may be available to her. We may therefore pass the argument without further comment, except to acknowledge that we are compelled to reject it. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

## III. *Fines*

At defendant's original sentencing on May 26, 2009, the court placed her on probation and adopted the recommendations of the probation report, including that she pay a restitution fine of $600 pursuant to Penal Code section 1202.4, subdivision (b) (§ 1202.4(b)), as well as a conditional probation revocation fine in like amount under Penal Code section 1202.44 (§ 1202.44).

When the court revoked probation on July 13, 2011, it again imposed a restitution fine under section 1202.4(b). The fine is described in the minutes as "$200 multiplied by the number of years of imprisonment, multiplied by the number of convicted Felony counts," based upon "PC 1202.4(b)(2)." At the hearing the court expressed an intention

9

to impose a fine of "$200 for each year of incarceration pursuant to 1202.4(b)." The abstract of judgment reflects a fine of $800 under section 1202.4(b).

Defendant contends that the court erred by imposing this fine upon revocation of probation, because the original $600 fine remained in effect and the court had no authority to impose a second, additional such fine. It is certainly correct that a court cannot impose two fines under section 1202.4(b) on the same charge. In *People v. Chambers* (1993) 65 Cal.App.4th 819, 820, 823, the court held that when a revocation fine is imposed in an order granting probation, that fine survives a subsequent revocation of probation. The sentencing court is without authority to impose a second restitution fine, and a second such fine must be stricken, even if first challenged on appeal. (*Ibid*.; see also *People v. Andrade* (2002) 100 Cal.App.4th 351, 357; *People v. Arata* (2004) 118 Cal.App.4th 195, 201-202.) The court is also without authority to increase the original fine, which "may only be imposed once at the time of conviction, which was when the probation was initially granted." (*People v. Perez* (2011) 195 Cal.App.4th 801, 805.)

We note a certain amount of disarray in the cases concerning the interpretation to be placed on a trial court's pronouncement of a section 1202.4(b) fine after revoking probation. We believe the soundest approach is also the simplest and clearest: Where a trial court pronounces a fine in the same amount as the fine originally imposed, the pronouncement must be presumed *not* to impose a second, additional fine but merely to *reiterate* the fine already imposed. In this view, the trial court commits no error merely by recording such a fine in the abstract of judgment. Indeed it *should* be recorded there, not to impose an additional obligation on the defendant but simply to memorialize the obligation already imposed. (See *People v. Hong* (1998) 64 Cal.App.4th 1071, 1083.)

This at any rate should be the rule in the absence of some indication that the court intended to impose an additional or increased fine. In that case, the correct remedy is to modify the judgment—and the abstract—to show only the original fine, or more

10

precisely, so much of that fine as remains unpaid. Here, the abstract should be modified to reflect the original fine of $600.

Respondent somewhat obliquely identifies a second deficiency in the judgment by contending that fine objected to by defendant was not an additional restitution fund fine under section 1202.4(b) but a probation revocation fine pursuant to Penal Code section 1202.44. The record contradicts this view in at least three respects: (1) The amount recited in the abstract of judgment differs from the original restitution fund fine; (2) at the sentencing hearing following the revocation of probation, the court never mentioned section 1202.44 or a probation revocation fine; and (3) the abstract of judgment attributes the fine to section 1202.4(b), and contains no entry in the space provided for a section 1202.44 fine.

However the abstract *should* contain an entry in that space. In its order granting probation the court quite properly imposed a section 1202.44 fine of $600, to be payable if but only if probation were revoked. This assessment became "effective upon the revocation of probation," and could "not be waived or reduced by the court, absent compelling and extraordinary reasons stated on record." (§ 1202.44.) It was thus "mandatory" (*People v. Guiffre* (2008) 167 Cal.App.4th 430, 434), if not self-executing. (See *People v. Hong*, *supra*, 64 Cal.App.4th at p. 1084 [failure to impose parole revocation fine was "jurisdictional error" which state could raise for first time on appeal].)

Defendant concedes that the court should have imposed a probation revocation fine in the amount of the original restitution fund fine ($600). We will direct such a modification.

### Disposition

The judgment is modified to (1) state that the sentences on counts 2 and 6 are stayed; (2) impose (i.e., reiterate) a restitution fund fine of $600 pursuant to section

11

1202.4(b); (3) impose (reiterate) a parole-revocation fine of $600 under Penal Code section 1202.45; and (4) impose a probation revocation fund fine of $600 under section 1202.44. The trial court is directed to prepare an amended abstract of judgment reflecting these changes and to forward the same to appropriate authorities. As so modified, the judgment is affirmed.

_____
RUSHING, P.J.

WE CONCUR:

_____
PREMO, J.

_____
ELIA, J.