[No. A068348. First Dist., Div. Three. June 20, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
TOM CHENG HSANG LIU, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II., VI., and VII.

**COUNSEL**

Cliff Gardner, under appointment by the Court of Appeal, and Gardner & Derham for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, and Catherine A. Rivlin, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

McGUINESS, J.*—Tom Cheng Hsang Liu appeals from jury convictions for conspiracy to commit murder and kidnapping for ransom. (Pen. Code,

*Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

§§ 182, subd. (a)(1), 187, subd. (a), 209.)[1] Appellant contends we must reverse because there was insufficient evidence to support the verdict, and because the trial court erred in denying his challenge of a prospective juror for cause, in giving improper jury instructions, and in sentencing. We stay part of appellant's sentence under section 654. In all other respects, we affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In April and May 1992, agents of the Department of Justice and San Francisco Police Department sought appellant's assistance in their investigation of a gambling club in Emeryville. As part of the investigation, the agents showed appellant the diary of Teng Wei, one of the owners of the club. From the diary appellant learned that Wei had arranged to force appellant out of his job at the Casino Royale Card Club in San Bruno in 1988 as part of Wei's attempt to purchase that club. This information in the diary angered appellant.

In June 1992, appellant met with Hiroshi Hirashima, an old friend and business partner. Appellant told Hirashima that Wei had cheated him out of $80,000. Appellant asked Hirashima if he knew anyone who could help him get his money back. Assuming that appellant wanted someone to "rough up" Wei, Hirashima told appellant that he might know of someone who could do that. After his meeting with appellant, Hirashima approached Frank Amo, who at that time was living with Hirashima's daughter Donna at Hirashima's house. Amo had previously collected money for Hirashima. Hirashima told Amo that he had a possible new collection job for him. Amo agreed to meet appellant.

Appellant took Amo and Hirashima out for dinner and told them that Wei had "ripped [him] off" and cheated him out of "millions" in the gambling business. Appellant wanted Amo to kidnap Wei, his wife and "possibly his children," extort them, and then kill them. It appeared to Amo that Hirashima already knew of the plan, and was participating with appellant in presenting it to Amo. Both appellant and Hirashima suggested that "it would be best if a White guy did the job" in order to divert attention from themselves. Hirashima said that he would have to "put . . . away" or kill anyone who learned about the plan. Amo was shocked and frightened. He agreed to help appellant and Hirashima because he "didn't want to end up dead on the beach at that point." They agreed to meet again to discuss details of the plan.

For the next several months, the three men met five or six times to discuss the plan to kidnap and kill Wei for money. Appellant showed Amo the

---

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

restaurant of appellant's former partner George Chung, and pointed out Wei at a gambling club. As the plan became more complex, Hirashima suggested that Amo get a second man to help him. Amo told Hirashima and appellant that he would try and find someone. At least once, appellant told Amo that if he could not find a second person to help him carry out the plan, appellant would do it with him.

In September or October 1992, appellant gave Amo $10,000 in cash for future expenses incurred in the plan to kill Wei. The next day, Hirashima gave Amo a semiautomatic .22-caliber gun with a silencer and told Amo to test the weapon. Amo purposely disabled the silencer by dipping it in water. After test firing the gun, Amo told Hirashima the silencer did not work. Hirashima told Amo they should return the $10,000 because they did not have the "tools" to complete the "job." When Amo and Hirashima returned the money to appellant, Hirashima kept $250 to purchase a new silencer. The three men agreed to meet again later.

In late December 1992, Hirashima obtained a new gun and silencer. Hirashima had Amo test-fire the gun for him, and then told appellant that the gun worked. Hirashima began to pressure Amo to go forward with the plan. At one point, Hirashima telephoned Amo at work and threatened to kill him if he was not serious about "doing this job." Fearing for his life, Amo contacted the Federal Bureau of Investigation (FBI) on January 22, 1993. That evening, Amo met with Special Agent Kingman Wong and told him about the plot to kill Wei.

On February 3, 1993, Wong gave Amo a concealed tape recorder and instructed him to record his next meeting with Hirashima or appellant. Later that day Amo spoke with Hirashima about the plot to kill Wei. On instructions from the FBI, Amo told Hirashima that he was ready to do the job. Hirashima telephoned appellant to tell him they were "ready to go." The three men arranged to meet the next day in order "to work out the final details of the job."

On February 4, 1993, Amo gave Wong the tape recording of his conversation with Hirashima. Wong fitted Amo with a body recorder, and arranged for FBI agents to surveil Amo's scheduled meeting with Hirashima and appellant. Amo met with Hirashima and appellant at a restaurant in San Bruno, under FBI surveillance. The three men discussed the plan to kidnap and murder Wei at his residence. Amo then followed appellant across the San Francisco Bay to see Wei's residence. Appellant again went over details of the plan with Amo and gave him some code phrases to use in communicating over the telephone. Afterwards, Amo turned over the body recorder and audiotape to the FBI.

During the following week, Wong met with other agents of the FBI and state and local law enforcement. They decided to bring the matter to a conclusion as quickly as possible. On February 11, 1993, Wong took Amo to a hotel in San Francisco, where Amo telephoned Hirashima and arranged to meet him at 4 a.m. the next morning at the South San Francisco produce market. At the prearranged meeting the next morning, Hirashima gave Amo two guns, a .38-caliber special and the .22-caliber with the silencer, and told him to "get rid of" the guns after using them. Amo left the produce market, gave a signal, and turned the guns over to San Francisco police. Hirashima was then arrested.

Amo returned to the hotel, where he telephoned appellant and told him in code that the job had been successfully completed. Amo gave appellant the address of the hotel and arranged to meet him to split the money. Shortly thereafter, appellant was arrested as he left his home to meet with Amo. In appellant's pocket, the police found a slip of paper with Amo's hotel address and room number.

On October 6, 1993, appellant and Hirashima were charged by information with two counts of conspiracy to commit murder (§§ 182, subd. (1), 187, subd. (a)), one count of conspiracy to commit kidnapping for ransom (§§ 182, subd. (1), 209), and one count of possession of a silencer (§ 12520). Each conspiracy count alleged 22 overt acts. Hirashima entered a plea of guilty to the lesser included offense of solicitation to commit murder (§ 653f, subd. (b)) in return for cooperating with the prosecution and testifying at appellant's trial. At the conclusion of the first trial in February 1994, the jury found appellant guilty of possession of a silencer. The jury could not agree as to the other three counts, and the trial court ordered a mistrial.

The district attorney filed an amended information on June 9, 1994, charging appellant with one count of conspiracy to murder and kidnap Wei for ransom (§§ 182, subd. (a)(1), 187, 209), with 14 overt acts alleged (count 1); one count of conspiracy to murder Wei's wife, with 14 overt acts alleged (count 2); and one count of solicitation to murder (§ 653f, subd. (b)) (count 3). Appellant pleaded not guilty. At the conclusion of the second trial, the jury found appellant guilty of counts 1 and 2, not guilty of count 3, and further found that all but two of the fourteen alleged overt acts were true.

The trial court imposed a sentence of 25 years to life on both counts 1 and 2, with the sentences to run concurrently, and a concurrent sentence of 2 years on the conviction from the first trial for possession of a silencer. This appeal followed.

## II. Denial of Challenge for Cause of Prospective Juror Hunt*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III. Sufficiency of Evidence to Sustain Conspiracy Conviction

Appellant argues that although there is ample evidence that he made plans with Hirashima and Amo to kidnap and murder Wei and his family, there is insufficient evidence to support his conspiracy convictions because none of the three coconspirators ever actually intended to commit those substantive crimes. Appellant's argument is two pronged. First, he asserts as a matter of law that if the members of an alleged conspiracy intend one person to perform acts constituting an essential element of the substantive target offense, and that person has no intent actually to commit the offense, the alleged conspirators cannot be guilty of criminal conspiracy. Second, he urges that there is "no evidence" that *any* member of the conspiracy ever intended actually to commit the target crimes of kidnapping and murder. We consider these contentions separately.

### Elements of Criminal Conspiracy

■ The necessary elements of a criminal conspiracy are: (1) an agreement between two or more persons; (2) with the specific intent to agree to commit a public offense; (3) with the further specific intent to commit that offense; and (4) an overt act committed by one or more of the parties for the purpose of accomplishing the object of the agreement or conspiracy. (*People v. Backus* (1979) 23 Cal.3d 360, 390 [152 Cal.Rptr. 710, 590 P.2d 837]; *People v. Sconce* (1991) 228 Cal.App.3d 693, 700 [279 Cal.Rptr. 59]; *People v. Cooks* (1983) 141 Cal.App.3d 224, 311 [190 Cal.Rptr. 211]; 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Elements of Crime, §§ 156, 164-165, pp. 173-175, 182-186.) ■ Both appellant and respondent agree that in cases where only two persons are involved and one is a government agent or informer, the other cannot be convicted of conspiracy. This is because the crime of conspiracy requires at least two people to have the requisite criminal specific intent, and a government agent by definition cannot be a coconspirator. (*United States v. Escobar De Bright* (9th Cir. 1984) 742 F.2d 1196, 1198-1200; *Sears v. United States* (5th Cir. 1965) 343 F.2d 139, 142.)

Appellant contends that the same rule applies to conspiracies of more than two persons. Under this interpretation of the law, if one person in *any* conspiracy is expected to perform the acts constituting the planned offense and that person never intends to do so, *none* of the coconspirators can be

*See footnote, *ante*, page 1119.

convicted of conspiracy. In support of his position, appellant relies on several older cases from other jurisdictions, and dicta in one California appellate case. (*People* v. *Towery* (1985) 174 Cal.App.3d 1114, 1131 [220 Cal.Rptr. 475]; *King* v. *State* (Fla. 1957) 104 So.2d 730, 733 [original dec. Sept. 25, 1957; dec. on reh. June 4, 1958]; *State* v. *Dougherty* (N.J. 1915) 96 A. 56, 57-58 [96 A 56]; *De Mayo* v. *United States* (8th Cir. 1929) 32 F.2d 472, 474; *Woo Wai* v. *United States* (9th Cir. 1915) 223 F. 412, 414-415.) In *King* v. *State*, the Florida court held broadly that a conspiracy conviction against two or more persons cannot be upheld where an act "essential" to the substantive offense charged as the object of the conspiracy was to be performed by, and only by, a government agent acting in the line of duty. (*King* v. *State, supra*, 104 So.2d at p. 733) The other cited cases are to the same effect.

None of these cases is controlling here. The rationale of *King* v. *State*, *Woo Wai*, and the other cases has been criticized and rejected in the more recent decisions considering this issue. Thus, at least six federal Circuit Courts of Appeals have explicitly or implicitly repudiated the rule of *King* v. *State*. (*U.S.* v. *Miranda-Ortiz* (2d Cir. 1991) 926 F.2d 172, 175; *U.S.* v. *Palella* (5th Cir. 1988) 846 F.2d 977, 980; *U.S.* v. *Giry* (1st Cir. 1987) 818 F.2d 120, 126; *United States* v. *Freeman* (10th Cir. 1980) 634 F.2d 1267, 1270; *United States* v. *Rose* (7th Cir. 1978) 590 F.2d 232, 233-236; *United States* v. *Rueter* (9th Cir. 1976) 536 F.2d 296, 298; *United States* v. *Seelig* (5th Cir. 1974) 498 F.2d 109, 112.)[2] Instead, these federal cases affirm the principle that conspiracy is based on an agreement to commit a crime and not the ultimate success of the crime planned. In accordance with this principle, all of these cases adopt the rule that when at least two coconspirators agree to violate the law and then perform an overt act in furtherance of that agreement, a criminal conspiracy has been formed and criminal liability attaches whether or not the substantive crime was ever accomplished, ever could be accomplished, or the person supposed to carry out the crime was

---

[2]The circumstances before the court in *United States* v. *Seelig, supra*, 498 F.2d 109 were quite similar to those in this case. In *Seelig*, the Fifth Circuit Court of Appeals stated: "We are . . . unpersuaded that we should adopt the rationale of King v. State, Fla.1958, 104 So.2d 730, and Woo Wai v. United States, 9 Cir. 1915, 223 F. 412, as the appellants so strongly suggest. These cases contain broad language to the effect that a conspiracy conviction cannot result where an 'essential' act to the consummation of the substantive offense is to be performed by a government agent. Such an approach . . . is inconsistent with the basic principle that a conspiracy is proved when it is established that two or more persons agreed to commit an offense and one of them engaged in an overt act in furtherance of the agreement. [Citation.] To the extent that *King* and *Woo Wai* are incompatible with this statement of the law, we decline to follow them. In this case the evidence conclusively demonstrates that [two defendants] agreed to supply cocaine to [a secret government informant] for distribution, and subsequently took steps to carry out the scheme. The fact that a government informant was to effect the actual distribution of the drug does not extirpate their liability for conspiring to violate the law." (*Id.* at pp. 112-113.)

actually an agent of the government. (*U.S.* v. *Miranda-Ortiz, supra,* 926 F.2d at p. 175; *U.S.* v. *Giry, supra,* 818 F.2d at p. 126; *United States* v. *Rose, supra,* 590 F.2d at pp. 234-236; *United States* v. *Rueter, supra,* 536 F.2d at p. 298.)

The one California case considering this issue, *People* v. *Towery, supra,* 174 Cal.App.3d 1114, is not controlling. Although the opinion in *Towery* discussed the holding of *King* v. *State,* the Court of Appeal did not expressly approve of it or adopt it as California law, and specifically declined to follow it under the factual circumstances before it. *Towery* dealt with the issue of the prima facie showing of conspiracy necessary to admit out-of-court statements over a hearsay objection. The decision simply did not address the question whether a defendant can be convicted of conspiracy if a coconspirator does not have the intent to commit the substantive crime. Its discussion of *King* v. *State* is therefore obiter dicta unnecessary to the decision in the case. (*People* v. *Towery, supra,* 174 Cal.App.3d at pp. 1130-1132.)

There is apparently no California law directly on point on this issue, which is thus one of first impression in this state. Like the federal courts that have considered this question more recently, we are unpersuaded by the rationale enunciated in *King* v. *State.* (*U.S.* v. *Miranda-Ortiz, supra,* 926 F.2d at p. 175; *U.S.* v. *Giry, supra,* 818 F.2d at p. 126; *United States* v. *Rose, supra,* 590 F.2d at pp. 234-236; *United States* v. *Seelig, supra,* 498 F.2d at pp. 112-113.) Appellant's proposed rule would shield coconspirators from criminal liability whenever the person designated to carry out an element of the planned crime lacks the intent to do so, even when the other coconspirators all specifically intend to violate the law and fully expect that the crime will actually be committed. The schemes of a group of persons united in strength, opportunity, resources and criminal purpose are far more dangerous to society and difficult to police than the efforts of a lone wrongdoer. (*Krulewitch* v. *United States* (1949) 336 U.S. 440, 448-449 [93 L.Ed. 790, 796-797, 69 S.Ct. 716] (conc. opn. of Jackson, J.).) Collaboration in a criminal enterprise significantly magnifies the risks to society by increasing both the likelihood that the scheme will be successful, and the amount of injury that may be inflicted. For this reason, public policy demands that criminal conspirators be held liable, whether or not their scheme is actually carried out. (*People* v. *Tatman* (1993) 20 Cal.App.4th 1, 8 [24 Cal.Rptr.2d 480]; *People* v. *Williams* (1980) 101 Cal.App.3d 711, 721 [161 Cal.Rptr. 830].)

Moreover, appellant's proposed rule is inconsistent with the principle that persons may be liable for conspiracy to commit a substantive crime even if

it would be factually impossible for them to complete the crime. Completion of the crime of conspiracy does not require that the object of the conspiracy be accomplished, or even that it be possible to accomplish it. Factual impossibility of accomplishing a substantive crime is therefore not a defense to a charge of conspiracy to commit that crime. (*People* v. *Peppars* (1983) 140 Cal.App.3d 677, 688 [189 Cal.Rptr. 879]; *U.S.* v. *Giry, supra*, 818 F.2d at p. 126; 1 Witkin & Epstein, Cal. Criminal Law, Elements of Crime, *supra*, § 161, pp. 179-180.) For the same reason, the fact that one of a group of alleged coconspirators secretly does not or legally cannot intend to commit the target crime should not be a defense to conspiracy charges or prevent a conspiracy conviction against the others, as long as there are at least two coconspirators involved whose mutual adherence to the common plan is genuine. (*United States* v. *Rose, supra*, 590 F.2d at p. 235; *United States* v. *Seelig, supra*, 498 F.2d at pp. 112-113; *Developments in the Law—Criminal Conspiracy* (1959) 72 Harv. L.Rev. 920, 926-927, fn. 35.)

We conclude that the feigned participation of a false coconspirator or government agent in a conspiracy of more than two people does not negate criminal liability for conspiracy, as long as there are at least two other coconspirators who actually agree to the commission of the subject crime, specifically intend that the crime be committed, and themselves commit at least one overt act for the purpose of accomplishing the object of the conspiracy. On this basis, appellant was properly charged with and convicted of conspiracy, even if Amo never intended to commit the substantive target offense himself.

Neither was there any error in the trial court's instructions to the jury. The trial court properly instructed the jury on all the elements of conspiracy, and charged that appellant must be found guilty of all those elements beyond a reasonable doubt. Contrary to appellant's contention, the trial court's instructions permitted the jury to find appellant guilty *only* if it concluded that there were *two or more* persons with the specific intent both to agree to commit the target crimes, and actually to commit those crimes. Under these instructions, the jury necessarily concluded that both appellant and Hirashima, at least, had the required specific intent. There was no error.

*Sufficiency of the Evidence*

 Appellant also contends that there was insufficient evidence to sustain his conviction. In reviewing a claim of insufficiency of the evidence on appeal, the critical inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson* v. *Virginia* (1979) 443 U.S. 307, 318-319 [61 L.Ed.2d

560, 573-574, 99 S.Ct. 2781].) We must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact; it is not whether guilt is established beyond a reasonable doubt. (*People* v. *Barnes* (1986) 42 Cal.3d 284, 303-304 [228 Cal.Rptr. 228, 721 P.2d 110]; *People* v. *Towler* (1982) 31 Cal.3d 105, 118 [181 Cal.Rptr. 391, 641 P.2d 1253]; *People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]; *People* v. *Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321]; *People* v. *Matian* (1995) 35 Cal.App.4th 480, 483-484 [41 Cal.Rptr.2d 459].)

■ ·In this case there was ample evidence to support appellant's conspiracy convictions. Both Amo and Hirashima testified that at least two persons, appellant and Hirashima, entered into an agreement to kidnap Wei and murder him and his wife, and that both appellant and Hirashima specifically intended and expected that the crimes would be committed. The jury heard tape recordings and had written transcripts of Amo's meetings with appellant and Hirashima, at which the three men thoroughly discussed the plan. Hirashima testified that he gave the weapons to Amo with the intent that they would be used to commit the murders, and the weapons themselves were introduced in evidence.

Appellant assumes not only that Amo never intended to go through with the crimes, but that he was the *only* person that the other members of the conspiracy ever intended would actually carry out the plan. In fact, Amo did not become a government agent until he contacted the FBI on January 22, 1993. Before that, he was legally capable of being a part of the conspiracy. Viewing the evidence in a light most favorable to respondent and presuming in support of the judgment the existence of every fact the trier of fact could reasonably deduce from that evidence, we conclude that there is sufficient evidence from which a reasonable jury could have believed that at some point before January 22, Amo was resigned to going through with the plan in order to protect himself and his family and therefore had the requisite intent. Moreover, Amo testified that appellant told him that if Amo did not find a second person to help him kidnap and murder Wei, appellant himself would help him commit the crimes. This fact alone was sufficient evidence to support appellant's conviction.

### IV. CONVICTION OF SEPARATE CONSPIRACY TO KILL WEI'S WIFE

■ Next, appellant asserts that we must reverse his separate conviction for the conspiracy to murder Wei's wife, because the evidence shows as a

matter of law that it was part of a single all-inclusive conspiracy to kidnap and murder Wei. There is no merit to this contention.

■ Appellant's argument is based on the principle that when two or more persons agree to commit a number of criminal acts, the test of whether or not they have formed a single conspiracy is whether the acts were merely steps or stages in the formation of a larger and ultimately more general, all-inclusive conspiracy directed at achieving a single unlawful result. (*Blumenthal* v. *United States* (1947) 332 U.S. 539, 558-559 [92 L.Ed. 154, 168-169, 68 S.Ct. 248].) Under this rule, where the evidence shows that a group of conspirators agreed to commit a number of different crimes incidental to a single objective, there is only one conspiracy, and convictions for multiple conspiracies cannot be sustained. (*People* v. *Lopez* (1994) 21 Cal.App.4th 1551, 1557-1559 [26 Cal.Rptr.2d 741].)

However, this rule does not apply where the several different criminal acts are separate murders of different individuals, even if the separate murders are incidental to a single objective. Just as the commission of several murders of separate identifiable victims results in more harm than the commission of a single murder, a conspiracy to commit several murders is a more serious wrong than a conspiracy to commit a single murder, no matter the extent to which the several murders are planned for the accomplishment of a single criminal purpose. Each separately planned murder is the goal of a separate conspiracy. (*People* v. *McLead* (1990) 225 Cal.App.3d 906, 920 [276 Cal.Rptr. 187]; *People* v. *Davis* (1989) 211 Cal.App.3d 317, 323 [259 Cal.Rptr. 348]; *People* v. *Williams* (1988) 201 Cal.App.3d 439, 442-446 [247 Cal.Rptr. 200]; cf. *People* v. *Lopez, supra,* 21 Cal.App.4th at p. 1558, fn. 2.)

■ In any event, the evidence supports the conclusion that appellant had separate motives in planning to kill Wei and his wife. The jury could have found both that appellant intended to kill Wei for revenge and to recover money, and that he planned to kill Wei's wife to prevent her from identifying her husband's killers. This is sufficient to uphold the separate convictions. (*People* v. *McLead, supra,* 225 Cal.App.3d at p. 920; *People* v. *Williams, supra,* 201 Cal.App.3d at pp. 442-446.)

Appellant also contends that the trial court erred in failing to instruct the jury to determine whether there were single or multiple conspiracies to murder Wei and his wife. The contention is meritless. This question is not one of fact, and the trial court did not err in failing to submit it to the jury for determination. (*People* v. *McLead, supra,* 225 Cal.App.3d at p. 921; *People* v. *Davis, supra,* 211 Cal.App.3d at pp. 322-323.)

## V. Jury Instructions on Elements of Conspiracy

■ Appellant asserts that the trial court violated his state and federal constitutional rights by failing to identify and define the crime that was the target of the conspiracy. There is no merit to this assertion.

The trial court gave the jury all the standard instructions on the law of conspiracy, and also defined the elements of murder and kidnapping for ransom. Among other things, the trial court instructed pursuant to CALJIC No. 6.11 as follows: "You must determine whether the Defendant is guilty as a member of a conspiracy to commit the *originally agreed upon crime or crimes*. And if so, whether the crime . . . *alleged in Count 1 and 2*, was perpetrated by a coconspirator in furtherance of such conspiracy and was a natural and probable consequence of the agreed upon criminal objective of such conspiracy." (Italics added.) Counts 1 and 2 of the information clearly alleged that the specific substantive crimes that were the objectives of the conspiracy were the kidnapping and murder of Wei, and the murder of his wife. In other instructions, the trial court informed the jury that in order to find appellant guilty of conspiracy, it would have to find beyond a reasonable doubt that appellant conspired to commit *either* murder or kidnapping for ransom; and that it must unanimously agree on *which* of the two substantive crimes appellant intended to commit.[3] In addition, the trial court instructed the jury that the fact a person associated with other persons alleged to have been members of a conspiracy was not in itself sufficient to prove that that person was a member of the alleged conspiracy.

Thus, contrary to appellant's assertion, the trial court's instructions sufficiently informed the jury that it was required to decide if appellant conspired to commit the specific "target" crimes alleged in the information, i.e., murder and kidnapping; and that it could not find appellant guilty of conspiracy without also finding that he had the specific intent to commit those crimes. There was overwhelming evidence to support the jury's conviction of appellant for conspiring to commit these specific crimes, and not some other unnamed hypothetical "target" offense. There was no error.

## VI., VII.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

[3]The trial court instructed: "In order to find the Defendant guilty of the crime of conspiracy in Count 1, you must find beyond a reasonable doubt that the Defendant conspired to commit one or more of said crimes. And you also must unanimously agree as to which particular crime or crimes he conspired to commit. If you find the Defendant guilty of conspiracy in Count 1, you will then include a finding on the question as to which such alleged crime or crimes you unanimously agree the Defendant conspired to commit."

*See footnote, *ante*, page 1119.

## VIII. CONCURRENT SENTENCES UNDER SECTION 654

Finally, appellant contends that the trial court erred under section 654 in imposing concurrent sentences on his conviction for possession of a silencer, his conviction for conspiracy to kidnap and murder Wei, and his conviction to murder Wei's wife. He maintains that because possession of a silencer was one of the overt acts in the conspiracy charges, that crime was incidental to the same objective as the two conspiracies, which themselves were incidental to each other. He insists that these three convictions could therefore not be separately punished.

■ The purpose of section 654 is to prevent multiple punishment for a single act or omission, even though that act or omission violates more than one statute and thus constitutes more than one crime. Although the distinct crimes may be charged in separate counts and may result in multiple verdicts of guilt, the trial court may impose sentence for only one offense—the one carrying the highest punishment. (3 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Punishment for Crime, § 1382, p. 1625.)[6] The "act" necessary to invoke section 654 need not be an act in the ordinary sense of a separate, identifiable, physical incident, but may instead be a "course of conduct" or series of acts violating more than one statute and comprising an indivisible transaction punishable under more than one statute.

The divisibility of a course of conduct depends upon the intent and objective of the defendant. If all the offenses are incidental to one objective, the defendant may be punished for any one of them, but not for more than one. On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, the trial court may impose punishment for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct. (*In re Adams* (1975) 14 Cal.3d 629, 634 [122 Cal.Rptr. 73, 536 P.2d 473]; *People v. Nguyen* (1988) 204 Cal.App.3d 181, 189-193 [251 Cal.Rptr. 40].) The principal inquiry in each case is whether the defendant's criminal intent and objective were single or multiple. Each case must be determined on its own facts. (*People v. Perez* (1979) 23 Cal.3d 545, 551 [153 Cal.Rptr. 40, 591 P.2d 63]; *People v. Beamon* (1973) 8 Cal.3d 625, 630-639 [105 Cal.Rptr. 681, 504 P.2d 905].) The question whether the defendant entertained multiple criminal objectives is one of fact for the trial

---

[6]Section 654 states: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

court, and its findings on this question will be upheld on appeal if there is any substantial evidence to support them. (*People* v. *Coleman* (1989) 48 Cal.3d 112, 162 [255 Cal.Rptr. 813, 768 P.2d 32]; *People* v. *Ratcliff* (1990) 223 Cal.App.3d 1401, 1408 [273 Cal.Rptr. 253].)

■ There was no error in imposing concurrent sentences for the two conspiracy convictions. There is substantial evidence that the objectives of the two conspiracies were different, and focused on two different individual victims. One objective was to kidnap and murder Wei; the other objective was to murder Wei's wife. This evidence that appellant entertained multiple, independent criminal objectives was sufficient to support concurrent sentencing for the two conspiracies, even if the conspiracies shared common overt acts and were parts of an otherwise indivisible course of conduct. (*People* v. *Williams, supra,* 201 Cal.App.3d at p. 445.)

■ On the other hand, there is no evidence to support a conclusion that the offense of possession of a silencer had any intent or objective other than the successful completion of the conspiracies. Appellant did not separately intend to obtain a silencer. To the contrary, it was Hirashima who obtained the silencer specifically to carry out the planned murders. Appellant's conviction of possession of a silencer was necessarily based on the acts of his coconspirator, which were merely incidental to the objective of the conspiracies.

We conclude that under section 654, appellant's conviction for possession of a silencer could not be separately punished because it was an indivisible part of the same course of conduct as the conspiracies. It was error to impose a concurrent sentence for that conviction. (*People* v. *Miller* (1977) 18 Cal.3d 873, 886-887 [135 Cal.Rptr. 654, 558 P.2d 552].) We therefore stay the concurrent sentence for possession of a silencer.

## IX. DISPOSITION

The concurrent sentence imposed for possession of a silencer in violation of section 12520 is stayed under section 654. In all other respects, the judgment is affirmed.

Corrigan, Acting P. J., and Parrilli, J., concurred.

A petition for a rehearing was denied July 18, 1996, and appellant's petition for review by the Supreme Court was denied September 25, 1996.