Filed 6/19/13  P. v. Martinez CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B237663 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA119368) |
| v. | |
| ROGELIO MARTINEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Roger Ito, Judge.  Affirmed.

Sarah A. Stockwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Blythe J. Leszkay, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Rogelio Martinez appeals his conviction on two counts of criminal threats (Pen. Code, § 422);[1] one count of dissuading a witness by force or threat of force or violence (§136.1, subd. (c)(1)); one misdemeanor count of cruelty to a child by inflicting injury (§ 273a, subd. (b)); one count of child abuse (§ 273a, subd. (a)); and one misdemeanor count of battery (§ 243, subd. (e)(1)). Appellant contends the court erred in failing to give a unanimity instruction with respect to the charges of criminal threats and dissuading a witness. Alternatively, he argues that if the crimes constituted a continuous course of conduct, section 654 applies and the sentences on two counts must be stayed. He also claims he is entitled to additional conduct credit under the current version of section 4019. We find no error and affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

Appellant and Elsa A. had three daughters together, Sandra, Suleyma, and Guadalupe. Appellant had not lived with them for approximately 10 years. On the evening of April 10, 2011, appellant went to their home. The weather was hot, so the door was open, and he just walked in. Elsa was in the kitchen, Sandra and 15-year-old Guadalupe were in one bedroom, and 16-year-old Suleyma was in another bedroom watching television. According to Guadalupe, Elsa told appellant to leave because he was "tipsy." He complained that the television was too loud. Then he walked to the room where Suleyma was watching television and screamed at her to turn the volume down. Elsa told him he should not get upset, that she was the one who made the rules. Appellant slapped Elsa on the right side of her face with an open hand. Guadalupe saw this happen from the doorway of the bedroom.

Suleyma heard her mother scream and walked quickly into the kitchen where she saw her mother holding her cheek and crying. Suleyma told appellant she was "tired of this" and was going to call the police. Appellant replied, "'Oh, you're gonna call the cops? Then I'm gonna kill your mom right here so I can have a reason to go to jail because I'm not going to jail for just hitting you guys. I'm gonna go because I'll kill her.

---

[1]     All further statutory citations are to the Penal Code unless otherwise noted.

2

That's going to be a good reason.'" Suleyma dialed 911 on her cell phone. Appellant told her he would kill her if she called the cops, then grabbed her phone and threw it on the floor. The phone broke.

Appellant tried to hit Elsa, then he took a knife from the kitchen and tried to stab her. Suleyma struggled with appellant and eventually got the knife from him. She told him she hated him, and he should go to jail because what he was doing was bad. Appellant said he was going to kill them if they did anything, and threatened to shoot Suleyma with a gun. He punched Suleyma at the top of her shoulder and attempted to leave the house. Guadalupe was in his way, so he shoved her against the wall and "socked" her on the lip. She "went down" and he kicked her in the ribs. Appellant left the house, stating he was going to get his gun. Suleyma called 911 from her mother's cell phone.

Appellant was not at the house when Los Angeles County Sheriff's deputies responded to the 911 call. They returned to the house after receiving a call that appellant had returned.

Appellant was arrested and charged by information with criminal threats against Elsa and Suleyma (counts 1 and 3); dissuading a witness by force or threat as to Suleyma (count 4); misdemeanor cruelty to a child by inflicting injury against Suleyma (count 5); felony child abuse against Guadalupe (count 6); and misdemeanor battery against Elsa (count 7). The information also alleged two prior prison terms and a prior strike conviction. After a jury trial, appellant was convicted as charged and the prior convictions were found true. This is a timely appeal from the judgment.

**DISCUSSION**

**I**

Appellant was charged in count 3 with criminal threats against Suleyma; in count 4 with dissuading a witness by force or threat against Suleyma; and in count 5 with cruelty to a child by inflicting injury. Appellant claims there was evidence of multiple discrete acts to support each of these counts, and hence a unanimity instruction should have been given as to each count.

3

In a criminal case, a jury verdict must be unanimous, and the jury must agree unanimously that the defendant is guilty of a specific crime. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) Thus, where one criminal act is charged, but the evidence suggests the commission of more than one such act, either the prosecution must elect the specific act relied upon to prove the charge to the jury, or the court must instruct the jury that it must unanimously agree that the defendant committed the same specific criminal act. (*People v. Napoles* (2002) 104 Cal.App.4th 108, 114.) This is "'to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done something sufficient to convict on one count.'" (*People v. Russo,* at p. 1132, italics omitted.)

There is an exception to the unanimity requirement "where the criminal acts are so closely connected that they form a single transaction or where the offense itself consists of a continuous course of conduct." (*People v. Rae* (2002) 102 Cal.App.4th 116, 122.) This exception was applied in *People v. Dieguez* (2001) 89 Cal.App.4th 266, 275, where the defendant was charged with making a series of false statements exaggerating his injuries to the same doctor during a single appointment. The court noted that the defendant's false statements were successive, compounding, and interrelated to one another, and all aimed at the single objective of obtaining workers' compensation benefits. In addition, the defendant offered exactly the same defense to each of his false statements. "There was no reasonable factual basis for the jury to distinguish between [defendant's] various statements, and no reasonable legal basis to distinguish between them in establishing a single offense of making a false statement to obtain workers' compensation benefits under [Insurance Code] section 1871.4. Thus, no unanimity instruction was required." (*Id*. at p. 276.)

The same analysis applies in this case. Count 3 charged appellant with making criminal threats against Suleyma. Under section 422, subdivision (a), "[a]ny person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement . . . is to be taken as a threat,

4

even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison."

Suleyma testified that when she said she was going to call the police, appellant said that if she said anything, he would kill her or go after her mother and sisters. Asked if appellant made any threatening statements about using the knife he had picked up, Suleyma testified: "He just kept saying that we weren't gonna get away with it. He kept saying he was gonna kill us if we did anything." He also said he would shoot them with his gun, and Suleyma was aware that he had guns. Elsa testified that appellant said repeatedly, "I'm going to kill you and your daughter." She understood this to mean he would kill her and Suleyma. According to Suleyma, the entire incident happened very quickly, in just a matter of seconds. Asked if it "seems like a blur really" as far as what happened, she said, "Yes, sir."

In closing, the prosecutor recounted evidence that appellant threatened to kill Elsa with a gun, and he also threatened to stab her. And specifically as to count 3 concerning Suleyma, the prosecutor argued that Suleyma called 911 because she was worried about appellant's threat that he was going to kill them. The threats were all made in a very brief, continuous period of time, a matter of seconds, during one family fight. They were simply slight variations on the same threat to Suleyma and to Elsa—"I'm going to kill you"—either by gun, or by knife, which threats caused Suleyma "reasonably to be in sustained fear" for her own and her family's safety. (§ 422, subd. (a).) There was no basis for an election, nor for a unanimity instruction as to count 3.

Count 4 charged appellant with dissuading a witness by force or threat, in violation of section 136.1. Subdivisions (a) and (b) of that section make it a crime to "knowingly and maliciously" prevent or dissuade a witness or victim from giving

5

testimony in any inquiry authorized by law, or from making any report of a crime to a peace officer or from causing the arrest of a person in connection with the crime. (§ 136.1, subds. (a), (b).) The information specifically charged that the act "was accompanied by force and an express and implied threat of force and violence upon SULEYMA [] and a third person and the property of a victim, witness and third person."

Suleyma testified that after appellant hit her mother, she told him she was going to call the police. He threatened her; she grabbed her cell phone and dialed 911. "In the process of clicking dial, he grabbed my phone, he snatched it off my hands, and he broke it." Just before he grabbed the phone from her, "he said that if I would call the cops he would kill me." In closing, the prosecutor argued with respect to count 4, "The victim on that charge is his daughter Suleyma G., the daughter who called 9-1-1 for help but unfortunately was not able to do so because he had intercepted by grabbing the phone, threw it on the floor, broke it, and also said if I'm going to go to jail for something, I'm gonna go to jail for something big." The prosecutor emphasized that appellant threw the phone with so much force that it cracked and would no longer be usable to call for help. Given the prosecutor's election to rely on the breaking of the cell phone as the basis for this charge, there was no need for a unanimity instruction on count 4.

Count 5 alleged cruelty to a child by inflicting injury on Suleyma, in violation of section 273a, subdivision (b). That section provides that a person who "willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, . . . is guilty of a misdemeanor." Suleyma testified that when she struggled to get the knife away from appellant, she received a cut to her right thumb.[2] She was asked whether during the incident in the kitchen where she was trying to grab the knife from

---

[2] At the preliminary hearing, Suleyma testified that the cut occurred when she smashed the window of appellant's truck in an effort to remove his gun. Asked about her testimony at trial that she was cut by the knife, she explained that she realized the cut occurred from the knife because there was blood in the kitchen and the deputies in front of the driveway saw blood on her hand before she broke the truck window. She testified that she wrapped her hand in a shirt when she broke the truck window. Her sister Guadalupe testified that Suleyma was cut by the knife.

appellant, "anytime did he punch, kick you, or injure you in any way." Suleyma said yes, "with his fist clenched and closed on my left side of the top shoulder right here, he socks me." The prosecutor argued that the infliction of unjustifiable pain or suffering on a child was proved because while Suleyma struggled with her father, "she has a cut from the knife in trying to disarm him, and on top of that he takes his hand, makes a fist out of it, and then he socks her in the clavicle." These two injuries occurred as part of the same continuous struggle, without any separation in time or location. This is a single, continuous transaction, and neither an election nor an unanimity instruction was required.

Notably, appellant's defense to all the charges was the same—that the victims were lying (or giving a "new and improved version" of events), and that there was no physical evidence presented to support their testimony. "'The "continuous conduct" rule applies when the defendant offers essentially the same defense to each of the acts, and there is no reasonable basis for the jury to distinguish between them.'" (*People v. Dieguez, supra*, 89 Cal.App.4th at p. 275.) That is the case as to the challenged counts. We find no error.

## II

Alternatively, appellant argues that the sentences on counts 3 and 5 should be stayed rather than run concurrently if the court concludes the crimes constituted a continuous course of conduct. Section 654, subdivision (a) prohibits multiple punishment for the same act. The purpose of this section "is to prevent multiple punishment for a single act or omission, even though that act or omission violates more than one statute and thus constitutes more than one crime. Although the distinct crimes may be charged in separate counts and may result in multiple verdicts of guilt, the trial court may impose sentence for only one offense . . . ." (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1135.) Multiple punishment is proper "if the defendant entertained multiple criminal objectives which were independent of each other." (*People v. Solis* (2001) 90 Cal.App.4th 1002, 1021.) Here we find separate objectives which preclude application of section 654.

A criminal threat, as charged in count 3, has as its objective the creation of sustained fear in the person to whom it is directed for his or her own safety or the safety of his or her own family. (§ 422, subd. (a).) The evidence supporting this count consisted of the verbal threats by appellant that he would kill Suleyma or go after her mother and sisters, and that he would kill them if they did anything. Suleyma testified that she called 911 that day because she was afraid appellant was going to kill them.

As to count 4, dissuading a witness, appellant grabbed the cell phone out of Suleyma's hand and forcefully threw it to the ground in order to prevent Suleyma from completing her call to the police. This is a separate objective from the one he had in count 3.

Count 5, cruelty to a child by inflicting injury, was premised on Suleyma's struggle with appellant to get the knife away from him. In attempting to free himself from her grasp, appellant caused Suleyma to sustain a cut to her hand during the struggle and he punched her in the clavicle. These willful acts, which took place during one struggle, caused her to suffer unjustifiable physical pain, within the meaning of section 273a, subdivision (b). The objective was entirely separate from the intent to cause fear in count 3, or the intent to prevent a report to the police. Section 654 did not preclude separate punishment for each of the three counts.

### III

Appellant claims he is entitled to additional presentence conduct credit pursuant to the October 1, 2011 amendment to section 4019. We disagree.

Appellant committed the offenses on April 10, 2011 and was taken into custody on April 11, 2011. The version of section 4019 in affect at that time provided that prisoners could earn an extra two days of conduct credit for every four days spent in jail. (Former § 4019.) He was sentenced on November 30, 2011, at which point he had been in custody for 234 days. The court calculated his conduct credits in accordance with the former version of section 4019, dividing his actual credits by four, then multiplying the result by two. (*People v. Gutierrez* (1991) 232 Cal.App.3d 1571, 1573.) This calculation resulted in 116 days conduct credit for appellant.

8

Appellant instead seeks the benefit of the amendment to section 4019, which became effective law on April 4, 2011, operative as of October 1, 2011. (Stats. 2011, ch.15, § 482). Under this amendment, defendants who commit crimes after October 1, 2011 are entitled to presentence conduct credit at a full, day-for-day rate, "*but* these new credits are expressly available only to defendants who committed their crimes after October 1, 2011. (§ 4019, subd. (h).)" (*People v. Hul* (2013) 213 Cal.App.4th 182, 186.) The changes to section 4019 "shall apply prospectively . . . for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law." (§ 4019, subd. (h).) Appellant's conduct credit was properly calculated under the prior law.

Appellant asserts that principles of equal protection require retroactive application of the amended statute. He concedes that in *People v. Brown* (2012) 54 Cal.4th 314, 328-329, the Supreme Court reviewed identical issues with respect to an earlier amendment, and held that equal protection does not require retroactive application. We are bound by this holding under *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455, and thus reject his equal protection challenge.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**

EPSTEIN, P. J.

We concur:

WILLHITE, J.                                    SUZUKAWA, J.

9