Filed 2/28/22  P. v. Thomas CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C092933 |
| Plaintiff and Respondent, | (Super. Ct. No. 19FE021541 ) |
| v. | |
| EDWARD EVERETTE THOMAS, | |
| Defendant and Appellant. | |

Sixty-three-year-old defendant Edward Everette Thomas got into a fight with his 72-year-old sister and his 94-year-old mother.  The jury convicted him of two counts of elder abuse and two counts of battery and found defendant personally inflicted great bodily injury on his victims.

On appeal, defendant challenges the admission of the evidence that defendant's ex-wife accused him of domestic violence five years prior to this attack.  Defendant asserts the trial court erred in allowing this evidence and that it violated his constitutional rights.  In supplemental briefing, defendant also argues we should remand the case for

1

resentencing in light of Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 441) (Assem. Bill No. 518), which gives the trial court discretion as to which term to sentence defendant where Penal Code section 654[1] is applicable. We shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Motion in Limine*

Prior to trial, the prosecution moved to admit evidence of an incident of domestic violence defendant inflicted on his ex-wife to prove his intent and to negate any claim of self-defense under Evidence Code section 1101, subdivision (b). It also sought to admit this evidence if defendant asserted his victims were violent under Evidence Code section 1103, subdivision (b).

In the prior incident, defendant and his ex-wife got into a fight over a religious issue. Defendant allegedly grabbed his ex-wife's throat and bit her face. Defendant claimed self-defense; the jury acquitted him of the charges.

At the outset, the trial court expressed concern that admitting this evidence would create a trial within a trial and could confuse the jury. The trial court concluded if the prosecution sought to prove the issue by a single witness, the probative value of that evidence would be substantially outweighed by its prejudice. If, on the other hand, the prosecution used multiple witnesses, the court found the probative value of the evidence would be outweighed by the undue consumption of time. The court indicated the nature of uncharged conduct was probably less severe than the conduct charged in this case. Ultimately, the trial court denied the first in limine motion to admit this evidence. On the second motion, the court concluded that if defendant claimed the victim was violent, the prosecution was entitled to put on evidence of defendant's violent tendencies under Evidence Code section 1103, subdivision (b).

---

[1] Undesignated statutory references are to the Penal Code.

*B. Evidence at Trial*

In November 2019, defendant's 72-year-old sister, G.W., their sister, E.T., and defendant lived with their 94-year-old mother, P.T. According to his driver's license, defendant was six feet two inches tall and weighed 205 pounds. G.W. was five feet seven inches tall and weighed 140 pounds. Defendant's mother was approximately five feet one inch tall and weighed 139 pounds.

G.W. has asthma and cannot be around people who smoke due to her high blood pressure. G.W. testified defendant knew he had to smoke in his bedroom and to cover the crack at the bottom of the door to prevent smoke from coming out. G.W. also testified defendant called her a "bitch" when she said she believed in God and the two argued about money defendant owed for rent.

On November 30, 2019, defendant failed to cover the crack in his door while he was smoking marijuana. G.W. testified she banged on his door and probably hollered at him to cover the crack so the smoke would not come out. She claims defendant opened his door and she entered his room. After G.W. went back into her room and laid on her bed, defendant barged in and hit her in the head with a glass object. Next, defendant tried to gouge her eyes with ink pens. He also bit her finger, her chest, and her face. G.W. testified defendant punched her in the stomach. G.W. did not remember if she knocked defendant's teeth out.

G.W. remembered P.T. came into the room and screamed for defendant to stop. At some point, P.T. fell on top of G.W. After P.T. got up, defendant struck P.T. with his fist and bit her on her face. P.T. was able to get up and run to the neighbor's house.

G.W. testified defendant next put his fingers in her nose and broke it. Defendant finally stopped the assault when Sacramento police showed up. G.W. was taken to the hospital and was in the intensive care unit for two days and in the hospital for a week. When she was discharged G.W.'s face was swollen, her finger was in a splint, and she

had lacerations on her body. She also had 16 stitches in her head, bite marks on her ear, arm and chest, fractured ribs, fractured fingers, and a fractured face bone.

Defendant's mother, P.T., did not testify. As a result of the altercation, she had abrasions and lacerations on her face, bite marks, and a broken rib.

When officers arrived, G.W. told the officers, "He beat me up." She also said defendant hit her with a jar. There was fresh blood all over her bedroom. G.W. told the officer the incident began when she confronted defendant about smoking marijuana in the house. Officers found a jar in G.W.'s room that had blood spattered on it.

P.T. was also bleeding and in distress. P.T. told the officers defendant attacked her.

Defendant testified on his own behalf. He stated the argument with his sister, G.W., was about him changing his social security from a check to direct deposit and not giving her money for rent. He claimed there was no way marijuana smoke could get out of his room, but that the argument about him smoking happened the day before the incident. Defendant claimed he weighed closer to 145 pounds on the day of the incident.

The day of the incident, defendant testified he was sleeping and G.W. started pounding on his door saying she could smell him smoking marijuana. He testified he was not smoking at the time. After, G.W. confronted him in the hallway and said they had to talk, he went into G.W.'s room.

G.W. was standing by the side of the bed. She asked him about smoking marijuana, and he said he was not smoking. Next, defendant accused G.W., of abusing their mother, P.T., and sister, E.T., because she refused to turn up the heat. Without warning, G.W. responded by punching defendant's teeth out with her fist. Defendant does not recall what happened after that. He remembers seeing P.T., and then she was gone. He also remembers G.W. was attacking him and would not stop. He did not remember hitting or biting P.T. Other than the loss of teeth, defendant suffered no other injuries in the incident.

4

Defendant testified G.W. is "pretty tough" and she "fights like a dude." Defendant said his brother taught G.W. how to fight, and she used to brag about fighting and beating up men. Defendant also claimed G.W. controlled the heat in the house and threatened to kick his butt if he ever touched the thermostat. Defendant asserted G.W. also abused another sister, Z.T.

Defendant testified it was not possible he attacked G.W. because he does not attack anyone; it is not in his nature. He testified he does not cause problems and does not go around "starting altercations with people."

After defendant's testimony about his docile character and G.W.'s controlling and abusive actions, the prosecution renewed its motion to present evidence of the incident with his ex-wife in Colorado under Evidence Code section 1103, subdivisions (a) and (b). Over the defense's objection, the trial court granted the motion and found the probative value of the evidence was not substantially outweighed by undue prejudice given the testimony provided.

On cross-examination, defendant denied he assaulted his ex-wife in 2015, or that he bit her or strangled her. Rather, defendant claimed his ex-wife falsely accused him of domestic violence and this was proven in court. When shown a picture of his ex-wife with scratches and a bite mark on her face, defendant denied he did that and claimed she did it to herself. Defendant claimed he went to the police department to file charges against her for an attack.

Defendant also testified G.W. was known to "kick butt." He claimed G.W. used to kick his sister's butts and would also kick his butt. When asked how G.W. could be violent, defendant identified G.W.'s past fights. Defendant stated G.W. liked to brag about perpetuating violence on others and constantly threatened people. He also said G.W. took a fighting stance and threatened to kick his butt twice before this incident. Defendant claimed G.W. was a violent person if you crossed her.

In the rebuttal phase of the trial, the prosecution presented the testimony of the officer who spoke with defendant the day of the assault. At that time, defendant stated the argument started over marijuana. Regarding his mother, P.T, defendant told the officer his mother got in the way and defended G.W.

Defendant's ex-wife, J.T., testified that on February 18, 2015, defendant was upset with her. When she asked him why, he told her she needed to talk to Jesus before she could talk to him and said he believed she was a hypocrite in her faith. J.T. told defendant she wanted a divorce and the two got into an argument. The argument morphed into one about him smoking marijuana in the house. In front of their children, defendant put his hands on her throat, scratched her face, and bit the right side of her face. J.T. reported the matter to the police and was devastated by the jury's verdict finding defendant not guilty.

The trial court instructed the jury on the character evidence of acts of violence admitted pursuant to Evidence Code section 1103. The court stated it was for the jury to decide whether the person acted in conformity with that character. The jury was also instructed on the issue of self-defense.

The jury convicted defendant of elder abuse of G.W. likely to produce great bodily injury (§ 368, subd. (b)(1); count one); elder abuse of P.T. likely to produce great bodily injury (§ 368, subd. (b)(1); count two); battery of G.W. causing serious bodily injury (§ 243, subd. (d); count three); and battery of P.T. causing serious bodily injury (§ 243, subd. (d); count four). As to the first two counts, the jury found defendant personally inflicted great bodily injury on the victims, who were 70 years of age or older, pursuant to section 12022.7, subdivision (c). As to counts three and four, the jury found true that defendant personally inflicted serious bodily injury on the two victims pursuant to section 1192.7, subdivision (c)(8).

The trial court sentenced defendant to a total of 11 years eight months in prison. The court sentenced defendant to four years on count one, which is the upper term for

6

elder abuse and a consecutive term of five years on the enhancement. The court sentenced defendant to a consecutive one-year term on count two, which is one third the middle term for elder abuse and a consecutive term of eight months on the enhancement. The trial court imposed and stayed (pursuant to § 654) four-year sentences on counts three and four, which is the upper term for each of those counts.

## DISCUSSION

### *Other Crime Evidence*

Defendant contends the trial court erred when it admitted the evidence concerning defendant's assault of his ex-wife. He claims this evidence allowed the jury to see that he was "a thug who terrorized women, devastated a past victim and escaped justice due to jury error" and the admission of this evidence violated his due process rights. We conclude the trial court properly admitted this evidence.

We review the admission of evidence under the abuse of discretion standard. (*People v. Scheid* (1997) 16 Cal.4th 1, 14; *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.) The trial court's decision should not be disturbed on appeal unless the trial court acted in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*Id.* at pp. 1124-1125.)

" 'As a general rule, evidence that is otherwise admissible may be introduced to prove a person's character or character trait. ([Evid. Code,] § 1100.) But, except for purposes of impeachment (see [Evid. Code,] § 1101, subd. (c)), such evidence is inadmissible when offered by the opposing party to prove the defendant's conduct on a specified occasion ([Evid. Code,] § 1101, subd. (a)), unless it involves commission of a crime, civil wrong or other act and is relevant to prove some fact (e.g., motive, intent, plan, identity) other than a disposition to commit such an act ([Evid. Code,] § 1101, subd. (b)).' [Citation.]" (*People v. Fuiava* (2012) 53 Cal.4th 622, 695, (*Fuiava*) italics omitted.)

7

One exception to this general rule is contained in Evidence Code section 1103. Under Evidence Code section 1103, subdivision (b), "evidence of the defendant's character for violence or trait of character for violence (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) is not made inadmissible by Section 1101 if the evidence is offered by the prosecution to prove conduct of the defendant in conformity with the character or trait of character and is offered after evidence that the victim had a character for violence or a trait of character tending to show violence has been adduced by the defendant under paragraph (1) of subdivision (a)." "In other words, if, as in the present case, a defendant offers evidence to establish that the victim was a violent person, thereby inviting the jury to infer that the victim acted violently during the events in question, then the prosecution is permitted to introduce evidence demonstrating that (1) the victim was not a violent person, and (2) the defendant was a violent person, from which the jury might infer it was the defendant who acted violently." (*Fuiava, supra*, 53 Cal.4th at p. 696.)

That is precisely what happened here. Defendant testified G.W. was abusive and violent. He claimed she "fights like a dude" and was "pretty tough." She threatened defendant if he touched the thermostat. He testified his brother taught her how to fight and she bragged about how she beat up men. In short, defendant claimed G.W. was a violent person.

On the other hand, defendant claimed that he had no violent streak. He asserted he would never attack anyone. He claimed this type of violence was not in his nature and he does not start altercations. Based on this evidence, defendant opened the door to the admission of the evidence that he assaulted his ex-wife five years prior under remarkably similar circumstances.

Even though this evidence is relevant, "[t]here is an additional requirement for the admissibility of evidence of uncharged crimes: The probative value of the uncharged offense evidence must be substantial and must not be largely outweighed by the

8

probability that its admission would create a serious danger of undue prejudice, of confusing the issues, or of misleading the jury." (*People v. Kipp* (1998) 18 Cal.4th 349, 371.)

We find no abuse of discretion here. The crimes displayed the same highly distinctive features: arguments over religion and marijuana; the biting injuries; and pointing to the other person as the aggressor. This evidence of defendant's prior assault of his ex-wife had strong probative value in that it negated defendant's claims G.W. was prone to violence while he was not. It also strongly negated his claim he was acting in self-defense or that G.W. was the aggressor.

Contrasted with this probative value, the trial court was required to weigh the danger of undue prejudice to defendant, the confusing of issues, or the misleading of the jury. (*People v. Kipp, supra*, 18 Cal.4th at p. 372.) The point of evidence of other crimes is that it is prejudicial. (*Ibid.*) Here, the prejudice was not unusually grave. The prior assault and injuries were far less severe than the current ones. The jury was not misled or confused but rather informed the Colorado jury had acquitted defendant of the prior crime after hearing all of the evidence. The jury heard both defendant and the ex-wife's side of the story. The judge instructed the jury on the proper use of this evidence. Thus, we conclude the trial court did not exceed the bounds of reason when it concluded the probative value of this evidence was not substantially outweighed by its prejudice once defendant put his own "gentle" demeanor and his sister's violent tendencies into issue.

Defendant further argues the admission of this evidence violated his due process rights and rendered his trial fundamentally unfair. We disagree.

In *People v. Blanco* (1992) 10 Cal.App.4th 1167, 1170, the defendant shot and killed his victim. At trial, he attempted to portray his victim as a person of violence and himself as a "peaceable man who would not engage in violence." (*Ibid.*) In rebuttal, the prosecution offered evidence the defendant engaged in violent disputes and associated threats against his wife and neighbors. (*Id.* at p. 1171.) The appellate court stated the

admission of evidence of the defendant's propensity for violence under Evidence Code section 1103 was "not so 'extremely unfair' as to be within the 'very narrowly' defined class of evidentiary statutes which violate ' "fundamental conceptions of justice." ' " (*Blanco*, at p. 1175)  The court concluded that Evidence Code section 1103, subdivision (b) was constitutionally applied, and the admission of this evidence did not offend constitutional principles of due process.  (*Blanco*, at p. 1176; see also *Fuiava, supra*, 53 Cal.5th at pp. 697-698 [Evid. Code, § 1103 is constitutional and does not violate "any fundamental constitutional principle of fairness and justice"].)  Similarly, the evidence admitted here was not so extremely unfair to violate fundamental conceptions of justice. We reject defendant's claim.

*Resentencing*

In his supplemental brief, defendant asks us to vacate his sentence and remand the matter for resentencing consistent with the recent amendment to section 654 under Assem. Bill No. 518.

Section 654 prohibits multiple punishment for any single act or omission.  If a single action or course of conduct by a defendant violates multiple laws, "the distinct crimes may be charged in separate counts and may result in multiple verdicts of guilt, [but] the trial court may impose sentence for only one offense."  (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1135.)  Until recently, the law required trial courts to impose sentence "under the provision that provides for the longest potential term of imprisonment."  (Former § 654.)

In 2021, however, the Legislature enacted Assem. Bill No. 518, which removes the requirement to impose the longest prison term.  The effective date of this change is January 1, 2022.  (*People  v. Camba* (1996) 50 Cal.App.4th 857, 865.)  Thus, section 654 now gives the trial court the discretion to impose sentence on any offense subject to the bar on multiple punishments.  (Stats 2021, ch. 441, § 1.)

10

Generally, "where [an] amendatory statute mitigates punishment and there is no saving clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed," so long as the amended statute takes effect before the judgment of conviction is final. (*In re Estrada* (1965) 63 Cal.2d 740, 748.)

As properly conceded by the Attorney General, the change to section 654 is ameliorative in that it may lessen a defendant's punishment. Thus, it operates retroactively. The Attorney General, however, asserts remand is unnecessary as the trial court stated it would impose the maximum sentence in this case. We agree.

" 'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' [Citation.] In such circumstances, [our Supreme Court has] held that the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' [Citations.]" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)

Here, the trial court sentenced defendant on counts one and two and stayed his sentence on counts three and four. During sentencing, the trial court stated, "[a]mong other things, the Court's decision [to deny defendant probation] is based on the nature, seriousness and circumstances of the crime, the serious–the vulnerability of the victims and the fact the Defendant inflicted significant physical injury on his victims. [¶] So the Court's aggregate sentence will be 11 years and eight months, which is the maximum I can give. I would give him more if I could, but that's the maximum I can give." Further, the trial court stated, "[a]nd I'll note that I do not have any discretion regarding the 12022.7(c) enhancements but if, in their infinite wisdom, the Legislature decides, while this case is pending on appeal, that Trial Courts do have discretion, I'll just make the

11

record clear that I would not—even if I had the discretion. I would not exercise my discretion to strike those enhancements." Given these statements, no purpose would be served by remanding this case for reconsideration. (*People v. Gutierrez, supra*, 58 Cal.4th at p. 1391.)

## DISPOSITION

The judgment is affirmed.

_____\\s\\_____,
BLEASE, Acting P. J.

We concur:

_____\\s\\_____,
MAURO, J.

_____\\s\\_____,
RENNER, J.