Filed 11/30/20  P. v. Jennings CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOSHUA JENNINGS,<br><br>Defendant and Appellant. | E072096<br><br>(Super.Ct.Nos. BAF1800824, BAF1701010 & SWF 1707303)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Chad W. Firetag, Judge.

Affirmed with directions.

Erica Gambale, under appointment by the Court of Appeal, for Defendant and

Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney

General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Alana

Cohen Butler, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

A jury found defendant and appellant Joshua Jennings guilty of inflicting corporal injury upon a spouse (Pen. Code,[1] § 273.5, subd. (a), count 1), making criminal threats (§ 422, count 2), dissuading a witness by threat of force or violence (§ 136.1, subd. (c)(1), count 3), and violating a protective or stay-away court order (§ 166, subd. (c)(4), count 4). A trial court found that he had a prior serious felony conviction (§ 667, subd. (a)) and a prior strike conviction (§§ 667, subds. (c) & (e)(1), 1170.12, subd. (c)(1)). The court sentenced defendant to 12 years in state prison.

On appeal, defendant contends: (1) the court erroneously believed it was required to imposed the term on count 3 consecutively, under section 1170.15; (2) the court should have stayed the sentence on count 3 pursuant to section 654; and (3) pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), the court's imposition of a court operations fee, a court facilities assessment fee, and a restitution fine violated his right to due process, absent a hearing on his ability to pay. We remand for resentencing on count 3, with regard to section 1170.15. In all other respects, we affirm the judgment.

## PROCEDURAL BACKGROUND

*Case No. SWF1707303*

In case No. SWF1707303, defendant pled guilty to unlawfully driving or taking a vehicle (Veh. Code, § 10851, subd. (a)), in exchange for the dismissal of charges of burglary, buying or receiving a stolen vehicle, and three drug-related offenses. On May

---

[1] All further statutory references will be to the Penal Code unless otherwise noted.

2

26, 2017, the court granted defendant five years of formal probation under specified conditions. On June 27, 2017, defendant admitted to violating his probation, and the court sentenced him to a two-year split sentence.

*Case No. BAF1701010*

In case No. BAF1701010, defendant pled guilty to first degree burglary (§ 459) and admitted that another person other than an accomplice was present in the residence during the commission of the burglary (§ 667.5, subd. (c)(21)). In exchange, the court dismissed charges of attempted criminal threats, purchasing a firearm while knowing he was prohibited from doing so, and violating a protective order. On January 29, 2018, the court again granted defendant five years of formal probation.

*Case No. BAF1800824* (*The Instant Case*)

On October 29, 2018, defendant was charged by first amended information with inflicting corporal injury upon a spouse (§ 273.5, subd. (a), count 1), making criminal threats (§ 422, count 2), dissuading a witness by threat of force or violence (§ 136.1, subd. (c)(1), count 3), and violating a protective or stay-away court order (§ 166, subd. (c)(4), count 4). The amended information also alleged that defendant had a prior serious felony conviction (§ 667, subd. (a)) and a prior strike conviction (§§ 667, subds. (c) & (e)(1), 1170.12, subd. (c)(1)). A jury found him guilty of all counts. In a bifurcated hearing, the court found the prior conviction allegations true. It also found that defendant was in violation of probation in case No. BAF1701010. The court denied

3

defendant's *Romero*[2] motion to dismiss his prior strike conviction. However, it exercised its discretion under section 1385 and struck the prior serious felony conviction enhancement. (§ 667, subd. (a).) It then sentenced defendant to 12 years in state prison as follows: the midterm of three years on count 1 and a consecutive three years on count 3, doubled pursuant to the prior strike. The court stayed the sentences on counts 2 and 4 under section 654. It terminated probation in case No. BAF1701010 and sentenced him to one year four months, to run consecutive to the sentence in the instant case. The court also terminated the mandatory supervision in case No. SWF1707303 and sentenced him to a consecutive term of eight months. Thus, the aggregate term for all three cases was 14 years.

## FACTUAL BACKGROUND

C.R. (the victim) had known defendant for approximately 13 years and was engaged to him. On July 2, 2018, the victim went to a police station to talk to the police. The videotape of the interview was played for the jury at trial. The victim said she and defendant had a history of domestic violence, and she had a restraining order against him. However, defendant's father had passed away, and defendant said he needed a place to stay for a while, so she let him stay with her. He stayed for about one month before the victim decided he needed to leave. Defendant was doing drugs while he stayed with her, and she told him she did not want him there anymore since he did not have his drug problem under control. Defendant locked himself in the bathroom, and she told him he

---

[2] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

needed to pack his belongings. He said he was not going to leave. The victim said if he did not leave, she would call the police and have him removed under the restraining order. Defendant came out of the bathroom, grabbed the victim by the collar, and shoved her against the wall. He pushed her onto the bed and got on top of her. He pulled her hair, grabbed her with both hands around her neck, and tried to choke her. The victim kept telling him he needed to leave. He said he had nowhere to go, and she was not going to kick him out on the street. At some point, defendant snapped back up and pushed her against the wall, and he released her. The victim grabbed her dogs, went outside to her car, and sat in her car crying.

The victim thought she had locked the car door but had not. Defendant came outside, opened the car door, and told her he would "cut [her] f--ing head off" if she called the cops. He also said that it would take the police at least 45 minutes to get there, and they would "have a very good reason to f---ing pick [her] up into (*sic*) pieces and f---king haul [him] off to jail." The victim was very afraid. She said she went into "survivor mode," went back into the house, and acted like she went to sleep. She got up early the next morning and went to the police station. Officer Garcia observed scratches on the victim's neck and upper chest.

At trial, the victim testified but denied that there had ever been any domestic violence between her and defendant or that he had ever threatened to hurt her. She admitted she went to the police station on July 2, 2018, and said she and defendant had a heated argument the day before. She testified that she spoke with an officer about what happened but lied when she said defendant had choked her. She essentially testified that

5

everything she told the officer was not true, and she lied to the police because she was angry with defendant.

ANALYSIS

I. The Court Erroneously Believed It Was Required to Impose the Sentence on Count 3 Consecutively

Defendant argues that the court erroneously understood that it was required to impose the term on count 3 consecutively, and the matter must be remanded for resentencing. The People concede that the court was unaware that it had discretion to sentence defendant either consecutively or concurrently on count 3, but argue that remand is unnecessary, since "it is highly unlikely" the court would have sentenced him differently. We agree with defendant that the matter should be remanded for the court to exercise its discretion.

A. *Background*

At the sentencing hearing, the court stated that defendant did not fall outside the scheme of the three strikes law and denied his request to dismiss his prior strike under *Romero*. It noted that the circumstances of the offense were "very serious" and that "this was a very violent act." It also observed that defendant's offenses were increasing in violence.

The court then stated: "The only struggle, I think, is whether the court should just grant the motion to strike the 667(a), nickel prior, and I guess just on balance . . . the Court has, I think, to strike that, but I think whether the Court should exercise its discretion, it's a very hard decision. [¶] I have to say I've gone back and forth a little bit

6

over it, because if I were to—I'll tell you what I'm—what I'm going to do in terms of the sentencing. I do think that Count 1 is the principal term here. I would choose the midterm of three years. Count 3, and this is pursuant [to] 1170.15, *must be served consecutive*." (Italics added.) The court found the middle term was also appropriate on count 3. It then stayed the sentences on counts 2 and 4 under section 654.

B. *The Matter Should Be Remanded*

The court stated its understanding of section 1170.15 was that it required imposition of a consecutive sentence on count 3. This issue was addressed in *People v. Woodworth* (2016) 245 Cal.App.4th 1473 (*Woodworth*). The court explained: "Section 1170 provides the basic framework for California's determinate sentencing law. Section 1170.1, subdivision (a) explains that if a defendant is to be sentenced for more than one felony, the total term of imprisonment is the aggregate term for all the convictions. The aggregate term is determined by imposition of a full sentence on the felony with the greatest term of imprisonment including enhancements (the principal term), and then adding a one-third the midterm sentence for each felony for which a consecutive sentence is imposed, including one-third the term for any enhancements applicable to those felonies (the subordinate term(s))." (*Id*. at p. 1478.)

However, section 1170.15 is an exception to that rule. It provides that "when a defendant is convicted of a felony, and also convicted of a second felony for a violation of section 136.1 (dissuading a witness) involving a witness to the first felony, 'the subordinate term for each consecutive offense' of dissuading a witness must be the full middle term for the dissuading a witness count plus any enhancements applicable to that

count." (*Woodworth*, *supra*, 245 Cal.App.4th at pp. 1478-1479.) The *Woodworth* court held that "the plain language of section 1170.15 does not mandate consecutive sentences." (*Id*. at p. 1479.) It explained that the statutory language "requires the trial court to impose the full middle term of imprisonment only if a consecutive sentence is imposed. The section does not require the trial court to impose a consecutive sentence, but instead indicates that if the trial court chooses consecutive sentencing it must impose a full-term sentence for the witness dissuasion count." (*Ibid*.)

The *Woodworth* court concluded: "Error occurred because the trial court did not realize it had discretion to impose a concurrent sentence. 'Generally, when the record shows that the trial court proceeded with sentencing on the erroneous assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing. [Citations.] Defendants are entitled to "sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court," and a court that is unaware of its discretionary authority cannot exercise its informed discretion.' " (*Woodworth*, *supra*, 245 Cal.App.4th at p. 1480.)

The People here concede that the court had discretion to sentence defendant to either a consecutive or concurrent term on count 3 and that the court "may have been unaware" of such discretion. However, like the Attorney General in *Woodworth*, the People urge us to conclude the error was harmless because the record establishes remand would be an idle act, since the trial court would impose the same sentence even if it exercised its discretion. (See *Woodworth*, *supra*, 245 Cal.App.4th at p. 1480.) The People assert that the court imposed a sentence it believed to be appropriate, with no

8

indication that "it felt constrained by its belief that count three must be run consecutively to count one." The People point to the court's refusal to exercise its discretion to dismiss defendant's prior strike and contend that "it would not seem that the court contemplated a sentence lower than 12 years."

However, the record reveals that the court chose *not* to dismiss defendant's prior strike conviction and "struggled with this [decision] greatly because the case [was] very serious." The court then chose *to dismiss* the five-year enhancement under section 667, subdivision (a). In doing so, it stated several times that it "struggle[d]" to decide, said "it's a very hard decision," and said it went "back and forth a little bit over it." In view of the court's comments, which reveal its struggle to determine an appropriate sentence, it is not clear what the court would have done if it had realized it had discretion to impose a concurrent sentence on count 3.

On this record, we are not willing to conclude that the court still would have sentenced defendant consecutively on count 3, as the People claim. Therefore, we will remand the matter for the court to have an opportunity to exercise its discretion whether to impose a concurrent or consecutive sentence on count 3. (See *Woodworth*, *supra*, 245 Cal.App.4th at p. 1480.)

II. The Court Properly Declined to Apply Section 654 to the Sentence on Count 3

Defendant next contends his sentence on count 3 should have been stayed pursuant to section 654 since the offense (dissuading a witness) was part of an indivisible course of conduct with the infliction of corporal injury in count 1. He argues that both offenses had the same intent and objective of instilling fear in the victim so that she would stop

9

insisting that he leave her home.  Defendant maintains that punishment was only warranted for the infliction of corporal injury in count 1.  We disagree.

A. *Section 654*

Section 654, subdivision (a) provides, in pertinent part, that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ."  "Section 654 precludes multiple punishments for a single act or indivisible course of conduct. [Citation.]" (*People v. Hester* (2000) 22 Cal.4th 290, 294.)  "The purpose of section 654 is to prevent multiple punishment for a single act or omission [or indivisible course of conduct], even though that act or omission [or indivisible course of conduct] violates more than one statute and thus constitutes more than one crime. . . ." (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1135 (*Liu*); see *People v. Harrison* (1989) 48 Cal.3d 321, 335.)

"The divisibility of a course of conduct depends upon the intent and objective of the defendant.  If all the offenses are incidental to one objective, the defendant may be punished for any one of them, but not for more than one.  On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, the trial court may impose punishment for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.  [Citations.]  The principal inquiry in each case is whether the

10

defendant's criminal intent and objective were single or multiple. Each case must be determined on its own facts. [Citations.] The question whether the defendant entertained multiple criminal objectives is one of fact for the trial court, and its findings on this question will be upheld on appeal if there is any substantial evidence to support them. [Citations.]" (*Liu*, *supra*, 46 Cal.App.4th at pp. 1135-1136.)

B. *The Court Properly Declined to Apply Section 654 to Count 3*

At sentencing, defendant argued that, pursuant to section 654, all of the convictions were based on a single act, and that "[y]ou can't have a criminal threat and intimidating a witness that relates to what happened prior. That's all part of the same transaction." The court stated that there were multiple acts within the same night and agreed that counts 2 and 3 were "654 of each other," but did not think "Count 1 and the threats in either Count 2 or Count 3 [were] 654 of each other." Thus, the court stayed the sentences on counts 2 and 4 pursuant to section 654, but did not apply section 654 to count 3.

Defendant's claim that the term imposed on count 3 should have been stayed under section 654 is without merit. He claims the offenses in counts 1 and 3 comprised an indivisible course of conduct in which the offenses were incidental to the one objective of "instill[ing] fear in [the victim] so that she would stop insisting [he] leave her home." However, the record shows he harbored separate criminal intents and objectives. In count 1, defendant was convicted of inflicting corporal injury on the victim. When she told defendant he needed to pack his belongings and leave, he refused and became angry. He grabbed her by the collar, shoved her against the wall, pushed her onto the bed, and

11

got on top of her. He pulled her hair, grabbed her with both hands around her neck, and tried to choke her. Defendant's objective in count 1 was to inflict pain and injury on the victim since he became angry when she told him he had to leave her home. In count 3, he was convicted of dissuading a witness by threat of force or violence. He went out to the victim's car, where she had gone to escape, and told her that if she called the cops, he would "cut [her] f----ing head off." He said it would take the police at least 45 minutes to get there, and that they would "have a very good reason to f----ing pick [her] up" in pieces and haul him off to jail. His objective was to prevent the victim from reporting his abuse to the police, not to continue inflicting injury on her. These objectives were distinct.

Therefore, despite the fact that the acts of counts 1 and 3 occurred on the same occasion, there is substantial evidence to support the determination that defendant harbored separate criminal intents and objectives. Accordingly, the court properly declined to apply section 654 to the sentence on count 3.

II. No Remand is Necessary with Regard to the Disputed Fines and Fees

Defendant challenges the court's imposition at sentencing of a $160 court operations assessment[3] (Pen. Code, § 1465.8), a $120 criminal conviction assessment (Gov. Code, § 70373), and a $300 restitution fine (Pen. Code, § 1202.4). Relying on the

_____

[3] The court orally ordered defendant to pay $130 for the court operation fee. However, the court appears to have misspoke since section 1465.8 requires an assessment of $40 for each criminal conviction. (§ 1465.8, subd. (a)(1).) Defendant had four convictions; thus, the court was required to impose a total of $160. We note that the minute order and abstract of judgment reflect the imposition of $160. Thus, no correction to the record is necessary.

recent appellate decision in *Dueñas*, *supra*, 30 Cal.App.5th 1157, defendant argues that the imposition of the fine and assessments without a hearing establishing his ability to pay violated his due process rights. (We will call this *Dueñas* error.) He notes the court found he did not have the ability to pay the fines and fees in the two probation violation cases, when defense counsel suggested the prosecution had the burden to prove he had the ability to pay under *Dueñas*. Thus, defendant requests this court to reverse the order in the instant case imposing the assessments and stay the restitution fine, pending a hearing regarding his ability to pay. We conclude that remand is not necessary.

No remand is necessary since any *Dueñas* error was harmless. *Dueñas*, *supra*, 30 Cal.App.5th 1157, involved a homeless probationer who suffered from cerebral palsy and was unable to work. She was married with two young children, and her family received public assistance. (*Id.*, at pp. 1160-1161.) Her driver's license was suspended when she could not pay some juvenile citations as a teenager. (*Id.* at p. 1161.) "She was then convicted of a series of misdemeanor offenses for driving with a suspended license, and in each case was given the impossible choice whether to 'pay[]' mandatory fees and fines—which she could not do, because of her poverty—or go to jail. [Citation.] After serving jail time in the first three of these cases, she still faced outstanding debt, which mounted with each conviction." (*People v. Johnson* (2019) 35 Cal.App.5th 134, 138 (*Johnson*).) Upon her fourth conviction for driving with a suspended license, Dueñas was placed on probation and again ordered to pay mandatory fees and fines. (*Dueñas, supra*, 30 Cal.App.5th at pp. 1161-1162.) She asked the court to set a hearing to determine her ability to pay the attorney fees and court fees she had been assessed. (*Id.* at

13

p. 1162.)  The court held an ability to pay hearing and concluded that she lacked the ability to pay the attorney fees, and it waived them "on the basis of her indigence."  (*Id.* at p. 1163.)  However, the court stated that the $30 court facilities assessment (Govt. Code, § 70373) and $40 court operations assessment (Pen. Code, § 1465.8) "were both mandatory regardless of Dueñas's inability to pay them."  (*Dueñas*, at p. 1163.)

Dueñas appealed and argued that "laws imposing fines and fees on people too poor to pay punish the poor for their poverty."  (*Dueñas, supra*, 30 Cal.App.5th at p. 1164.)  The appellate court agreed, concluding that due process "requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments under Penal Code section 1465.8 and Government Code section 70373."  (*Ibid.*)  The court also held that "although Penal Code section 1202.4 bars consideration of a defendant's ability to pay unless the judge is considering increasing the fee over the statutory minimum, the execution of any restitution fine imposed under this statute must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine."  (*Ibid.*)

We first note that the facts in the instant case bear no similarity to the unique factual circumstances presented in *Dueñas*.  The *Dueñas* court observed that the record in that case "illustrate[d] the cascading consequences of imposing fines and assessments that a defendant cannot pay."  (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1163.)  It also noted that the case did not " 'stem from one case for which she's not capable of paying the fines

14

and fees,' but from a series of criminal proceedings driven by, and contributing to, Dueñas's poverty." (*Id.* at p. 1164.) There were no such similar circumstances here.

Furthermore, any error in failing to conduct an ability to pay hearing was harmless. "A ' "very limited class" ' of federal constitutional errors are 'subject to per se reversal'; all others are 'amenable to harmless error analysis.' [Citations.] *Dueñas* did not address whether *Dueñas* error requires an automatic reversal." (*People v. Jones* (2019) 36 Cal.App.5th 1028, 1035.) "We therefore consider whether the error here was harmless beyond a reasonable doubt." (*Ibid.*; see *Chapman v. California* (1967) 386 U.S. 18, 24.)

The record here shows that defendant began working as a security officer when he was 18 years old, after graduating from high school, and that he became a certified security officer after training at an academy in 2007. In 2017, he worked as a security officer and earned $11.00 per hour. He reported other income as $200 per month from " 'stealing and selling' various items." Although "[t]hese are hardly indications of wealth . . . there is enough evidence in the . . . record to conclude that the total amount involved here did not saddle [defendant] with a financial burden anything like the inescapable, government-imposed debt trap Velia Dueñas faced." (*Johnson*, *supra*, 35 Cal.App.5th at p. 139.)

Moreover, not only does the record show defendant had some past income-earning capacity, he will have the ability to earn prison wages while incarcerated. (See *People v. Hennessey* (1995) 37 Cal.App.4th 1830 [ability to pay includes a defendant's ability to obtain prison wages]; see also *Johnson*, *supra*, 35 Cal.App.5th at p. 139; *Jones*, *supra*, 36

Cal.App.5th at p. 1035.) He was sentenced to an aggregate term of 14 years in prison. Even if, for some reason, defendant does not earn enough in prison wages, there is no reason to believe he will not be able to earn enough to pay whatever sum is then left. In other words, on this record, the idea that defendant cannot afford to pay the $580 in ordered fines and fees is untenable.

In sum, "even if we were to assume [defendant] is correct that he suffered a due process violation when the court imposed this rather modest financial burden on him without taking his ability to pay into account" (*Johnson*, *supra*, 35 Cal.App.5th at pp. 139-140), there is no reason to doubt defendant has, or will have, the ability to pay the $580. Accordingly, on this record, we conclude the *Dueñas* error was harmless. (*Jones*, *supra*, 36 Cal.App.5th at p. 1035; see *Johnson*, at pp. 139-140.)

### DISPOSITION

The matter is remanded for the limited purpose of allowing the trial court the opportunity to exercise its discretion whether to impose a consecutive or concurrent sentence on count 3, under Penal Code section 1170.15. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
J.

We concur:

CODRINGTON
Acting P. J.

SLOUGH
J.

16