Filed 3/27/23 P. v. Clayton CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>DONALD ROY CLAYTON,<br><br>     Defendant and Appellant. | F083231<br><br>(Super. Ct. No. BF178919A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County. Brian M. McNamara, Judge.

Aaron Spolin and Jeremy Cutcher, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Sally Espinoza, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Following a jury trial that concluded in June 2021, defendant Donald Roy Clayton was convicted of various offenses in connection with his nonfatal shooting of another man. In this appeal, defendant primarily asserts violations of the confrontation clause and the right to a fair trial caused by the wearing of face masks by himself and at least one juror due to COVID-19 restrictions. Alternatively, he seeks remand for resentencing based on the trial court's purported lack of awareness of its discretion to strike certain enhancements and a postsentencing ameliorative change in law under Senate Bill No. 81 (2021–2022 Reg. Sess.) (Senate Bill 81), which he argues is retroactive. By way of invited supplemental briefing, defendant also seeks remand for resentencing under the new discretion afforded by Assembly Bill No. 518's (2021–2022 Reg. Sess.) (Assembly Bill 518) postsentencing amendments to Penal Code section 654.[1] We reject defendant's constitutional arguments and remand for resentencing in light of the postsentencing amendments to section 654.

## PROCEDURAL SUMMARY[2]

By amended information filed on May 18, 2021, the District Attorney of Kern County charged defendant with attempted premeditated murder (§§ 187, subd. (a), 664; count 1), assault with a firearm (§ 245, subd. (a)(2); count 2), possession of a handgun as a felon (§ 29800, subd. (a)(1); count 3), possession of ammunition as a felon (§ 30305, subd. (a); count 4), and maliciously discharging a firearm from a motor vehicle (§ 26100, subd. (c); count 5). It also alleged that defendant intentionally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)) while committing an enumerated felony (§ 12022.53, subd. (c)) as to counts 1 and 5; personally used a firearm (§ 12022.5, subd. (a)) as to counts 2, 3, and 4; inflicted great bodily injury (§ 12022.7, subd. (a)) as to

---

**1** All further statutory references are to the Penal Code.

**2** Because defendant raises only sentencing and procedural issues that do not require assessing the evidence presented, we omit from this opinion the facts underlying the offenses.

counts 2, 3, and 5; had suffered a prior "strike" conviction within the meaning of the "Three Strikes" law (currently codified at §§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) as to all counts; and had a prior serious felony conviction (§ 667, subd. (a)) as to counts 1 and 2.

A jury trial took place from late May to mid-June 2021. On June 14, 2021, the jury found defendant not guilty of attempted murder (count 1) but guilty of the lesser included offense of attempted voluntary manslaughter (§§ 192, 664). The jury also found defendant guilty of counts 2 through 5 and found true all associated firearm and great bodily injury enhancements. In a bifurcated proceeding, the trial court found true the prior conviction allegations.

On August 11, 2021, the trial court sentenced defendant to an aggregate determinate term of 15 years, plus an indeterminate term of 25 years to life, in prison. The court imposed and executed the sentence only for count 5 and two enhancements, sentencing defendant to the midterm of 10 years (§ 26100, subd. (c); § 667, subd. (e)(1)), plus five years for the prior serious felony (§ 667, subd. (a)(1)), plus 25 years to life for discharging a firearm resulting in great bodily injury (§ 12022.53, subd. (d)).[3] The court stayed the midterm sentences imposed for counts 1 through 4 and their associated enhancements pursuant to section 654. This appeal followed.

## DISCUSSION

### I.     Constitutionality of Courtroom Face Masks Due to COVID-19

Defendant's primary contention on appeal is that it violated his confrontation and fair trial rights for the trial to take place with both him and at least one juror wearing a face mask due to the COVID-19 pandemic. Despite centering his appeal on these arguments, defendant provides little information about the nature of the COVID-19 restrictions actually in place during the trial. The trial transcript indicates that, at the trial

---

[3]     The court stayed the remaining enhancements for count 5.

court's instruction, each witness who testified in person removed their mask before testifying and then re-masked upon exiting the witness stand.[4] The transcript reflects that defendant followed the same protocol when he testified as well. According to defendant, he wore a mask that covered his mouth and nose at all other points during the trial, except when asked to momentarily lower his mask to allow witnesses to identify him. The transcript does not directly reveal whether the jurors also wore masks throughout the trial, except that at one point a witness referred to a juror "with [a] blue mask on" by way of explaining his vantage point during the shooting. This reference, combined with the trial court's dedication to ensuring that witnesses would re-mask when leaving the witness stand, strongly suggests that the entire jury was masked during the trial, however.

Most problematically for purposes of this appeal, there is no indication that defense counsel made any objection to either his masking or any juror's masking. The People argue defendant therefore forfeited the present constitutional claims on appeal. We agree. (See *People v. Arredondo* (2019) 8 Cal.5th 694, 710 [a defendant's failure to object to an alleged confrontation clause violation forfeits the claim on appeal].) Enforcing the forfeiture rule in this case makes particular sense, given that an objection below would have clarified the nature of the masking restrictions at issue—and, indeed, would have confirmed whether defendant was opposed to the masking rules at all. (See *ibid.* [noting that, had the defendant objected, the trial court would have had an opportunity to make additional findings on the record, as well as to correct any error].) Still, we additionally exercise our discretion to decide the claims on their merits given the absence of any demonstrated constitutional violation and the need to address defendant's corollary ineffective assistance claim in any event.

---

**4** One witness, a surgeon who operated on the victim in the hospital after the shooting, testified remotely via two-way video conferencing.

4.

### A. *Defendant's Masking*

We first address defendant's twin arguments regarding the unconstitutional impact of his own masking both from the perspective of his accusers (that is, the witnesses against him) and from the perspective of the jury. The former implicates the Sixth Amendment's confrontation clause, and the latter implicates the fair trial rights provided by the Sixth Amendment and the due process clause.

Defendant is correct that, as a general rule, the confrontation clause of the Sixth Amendment to the United States Constitution guarantees defendants "a face-to-face meeting with witnesses appearing before the trier of fact." (*Coy v. Iowa* (1988) 487 U.S. 1012, 1016 (*Coy*); but see *Maryland v. Craig* (1990) 497 U.S. 836, 850 (*Craig*) [Sixth Amendment's preference for face-to-face confrontation gives way when "necessary to further an important public policy" and "where the reliability of the testimony is otherwise assured"].) In this case, we need not delve into *Craig*'s public policy exception because defendant's wearing of a mask did not deprive him of a face-to-face encounter with the trial witnesses—all of whom, themselves, were unmasked while testifying.

The confrontation clause provides a criminal defendant " 'the right physically to face those who testify against him' " so as to ensure the integrity of the factfinding process, given "[i]t is always more difficult to tell a lie about a person 'to his face' than 'behind his back.' " (*Coy*, *supra*, 487 U.S. at pp. 1017, 1019; see *id*. at p. 1019 ["A witness 'may feel quite differently when he has to repeat his story looking at the man whom he will harm greatly by distorting or mistaking the facts.' "].) Thus, in both *Coy* and *Craig*, the United States Supreme Court was reviewing witness-protective measures that totally shielded the witness from seeing the defendant as the witness testified. (See *Coy*, at pp. 1014–1015, 1020 [large screen between witness stand and defendant]; *Craig*, *supra*, 497 U.S. at pp. 851–852 [testimony via one-way closed-circuit television].)

Here, defendant's mask covering his mouth and nose in no way prevented the witnesses from looking at him and perceiving his presence as they testified. (See *State v.*

5.

*Daniels* (Tenn.Ct.App. 2022) 656 S.W.3d 378, 388 [rejecting the defendant's argument "that the requirement that he wear a mask during trial prevented the witnesses from perceiving his presence" where only the defendant's nose and mouth were obscured].) All but the surgeon who testified via videoconferencing system were physically present in the courtroom, and defendant raises no challenge to the surgeon's remote appearance.[5] The physically present witnesses were fully able to look defendant in the eye while testifying, a hallmark of confrontation. (See *Coy*, *supra*, 487 U.S. at p. 1018 [noting the common phrase, " 'Look me in the eye and say that.' "].) We are aware of no authority, and defendant cites none, holding that the confrontation clause enshrines a right for the defendant to convey to the jury his reaction to witness testimony through his facial expressions.[6] (See *United States v. Tagliaferro* (S.D.N.Y. 2021) 531 F.Supp. 3d 844, 849 [noting lack of precedent on whether requiring a criminal defendant to wear a mask during trial violates the confrontation clause, and finding no violation because witnesses would testify in the defendant's "presence and within his scope of vision," which would "impress upon them the gravity of the proceedings at which they testify"].) The confrontation clause does require the jury's ability to observe the demeanor of *witnesses* on the stand. (See *Craig*, *supra*, 497 U.S. at p. 845 [confrontation means " 'compelling [the witness] to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief' "].) But in this case, there was no arguable hindrance in

---

[5] The surgeon's testimony was very brief, describing the victim's injuries and the operation performed; and defendant declined to cross-examine him.

[6] As discussed next, other constitutional provisions require the jury's ability to observe the defendant's demeanor throughout trial proceedings; and we acknowledge Justice Kennedy's brief mention in a concurring opinion that a "defendant's demeanor may also be relevant to his confrontation rights." (*Riggins v. Nevada* (1992) 504 U.S. 127, 142 (conc. opn. of Kennedy, J.) (*Riggins*).)

that regard because, again, all witnesses testified without their masks on. Defendant's masking at trial did not violate the confrontation clause.

Turning to defendant's larger argument, we also conclude that defendant's masking did not violate his fair trial rights provided by the Sixth Amendment and the due process clause of the Fourteenth Amendment to the United States Constitution. Defendant argues that his mask blocked the jury from seeing his "emotional expressions and facial emotions" while seated at the defense table during trial. Defendant compares the "inhibition" of his mask on his "perceived capacity to react and respond to the proceedings and to demonstrate compassion" to the medical side effects of tranquilizers and involuntarily administered antipsychotic medicines discussed in *People v. Gurule* (2002) 28 Cal.4th 557 (*Gurule*) and *Riggins*, *supra*, 504 U.S. 127, respectively.

In *Gurule*, our Supreme Court rejected the defendant's claim that the trial court improperly allowed voir dire to proceed while he was under the influence of "tranquilizers" he had taken two nights before to help him sleep. (*Gurule*, *supra*, 28 Cal.4th at pp. 598–599.) Noting defense counsel's assurance that the defendant was mentally and physically able to participate and the defendant's statement that he "felt all right," the court found no substantial evidence the medication had any palpable effect on him. (*Ibid*.) However, in a footnote, the court quoted at length from Justice Kennedy's concurring opinion in *Riggins* about the constitutional dangers of involuntarily administering antipsychotic medicines to render a defendant competent for trial. (See *Gurule*, at p. 598, fn. 8.) For instance, in the passages *Gurule* quoted, Justice Kennedy noted "a fundamental assumption of the adversary system that the trier of fact observes the accused throughout the trial, while the accused is either on the stand or sitting at the defense table." (*Riggins*, *supra*, 504 U.S. at p. 142 (conc. opn. of Kennedy, J.).) "At all stages of the proceedings, the defendant's behavior, manner, facial expressions, and emotional responses, or their absence, combine to make an overall impression on the trier of fact, an impression that can have a powerful influence on the outcome of the trial."

7.

(*Ibid.*)  The *Riggins* court reversed the defendant's conviction after a trial at which he involuntarily received ongoing doses of antipsychotic medication in the "toxic range" that could cause "drowsiness or confusion" and a " 'sedationlike effect' " that could " 'affect thought processes' " (*Riggins*, 504 U.S. at pp. 137–138), sometimes to the point that the recipient " 'can barely function' " (*id.* at p. 143 (conc. opn. of Kennedy, J.)).  The Supreme Court determined there was "a strong possibility that [the] defense was impaired" because of the chance the above "side effects had an impact upon not just [the defendant's] outward appearance, but also the content of his testimony on direct or cross examination, his ability to follow the proceedings, or the substance of his communication with counsel."  (*Riggins*, at p. 137.)

We thoroughly agree with Justice Kennedy's observation that "serious prejudice could result if medication inhibits the defendant's capacity to react and respond to the proceedings and to demonstrate remorse or compassion."  (*Riggins*, *supra*, 504 U.S. at pp. 143–144 (conc. opn. of Kennedy, J.).)  We simply are not persuaded that a small piece of cloth over defendant's nose and mouth in this case caused anywhere near the levels of impairment feared in *Riggins*.  There is no suggestion the mask compromised defendant's ability to comprehend the proceedings or communicate with counsel; and it could not have impacted his testimony on the stand because he, like the other witnesses, was allowed to remove the mask while testifying.  At most, defendant's mask blocked the jury's view of his facial expressions below the nose line.  However, this limited obstruction did not significantly hinder observation of defendant's demeanor and emotions.  Based on defendant's description of the mask, we are confident the jurors could still see defendant's eyes, the tops of his cheeks, and his overall body language while seated at the defense table.  While he was on the stand, the jurors also had a totally unfettered view of him, including all facial expressions.

Accordingly, defendant fails to demonstrate that his wearing of a mask at trial violated any of the constitutional rights asserted on appeal.

### B. The Jury's Masking

Second, we address defendant's more haphazard set of arguments regarding the unconstitutionality of at least one juror wearing a mask during the trial. Even assuming all jurors were masked throughout voir dire and trial, defendant again fails to identify a resulting constitutional violation.

Initially, defendant posits that the right to a trial by impartial jury "requires that the defendant be brought face to face with the jurors," and that the jury's masking "effectively destroyed" that right. The sole case defendant cites in support is *Lewis v. United States* (1892) 146 U.S. 370. In *Lewis*, each side had been required to make its challenges to prospective jurors in secret, and there was no indication that the defendant was present until after the challenges were made. (*Id.* at pp. 371–372, 375.) The Supreme Court disapproved this method, holding that the defendant had the right "to be brought face to face with the jurors at the time when the challenges were made." (*Id.* at p. 376.) Thus, *Lewis* merely stands for the proposition that a defendant generally has the right to be present for jury selection, a critical stage of the proceedings, so that he might "inspect[ ]" potential panel members. (*Id.* at p. 375.)

Defendant makes no argument regarding any aspect of the jury selection process in this case, nor is it clear whether any jurors wore face masks during voir dire.[7] Accordingly, *Lewis* offers little support. Even assuming all jurors were masked throughout voir dire, however, the masks did not materially alter defendant's ability to come "face to face" with them. For the same reasons discussed above with respect to defendant's masking, we are not convinced that a juror's wearing of a small piece of cloth over their nose and mouth would significantly prevent defendant's ability to inspect

---

[7] Having received no request for their inclusion, the voir dire transcripts were not made part of the record in this appeal. (See Cal. Rules of Court, rule 8.320(c)(3) [normal record must contain "oral proceedings at trial, but excluding the voir dire examination of jurors and any opening statement"].)

them and offer challenges to their empanelment. (See *United States v. Thompson* (D.N.M. 2021) 543 F.Supp.3d 1156, 1164 [noting unawareness of any authority "holding that the Sixth Amendment right to an impartial jury or Due Process demand that the defendant have unimpeded visual access to prospective jurors' facial expressions during jury selection"].)

Defendant mainly argues that the wearing of a mask by at least one juror *during the trial* precluded him and his counsel from gauging that juror's behavior and facial expressions and tailoring their trial strategy or presentation accordingly. Defendant cites no precedent requiring that a criminal defendant have an unobstructed view of the faces of his jurors throughout trial; nor are we aware of case law finding a constitutionally guaranteed right to personally inspect and observe the jury during trial—as opposed to during jury selection.

Defendant also frames the jury's masks as hindering both his and the court's ability to detect "unaccountable prejudices" and ensure the jury's impartiality during trial. However, again, defendant's cited cases do not help establish any constitutional violation. *Gomez v. United States* (1989) 490 U.S. 858, 874–875 merely notes the importance (as a practical matter) of scrutinizing jurors' nonverbal cues during *jury selection*. Meanwhile, *Tanner v. United States* (1987) 483 U.S. 107, 127 and *United States v. Provenzano* (3d Cir. 1980) 620 F.2d 985, 996–997 address defendants' Sixth Amendment interests in an unimpaired jury. There is no suggestion the masks themselves impaired any juror; and we strongly doubt that a piece of cloth covering only the nose and mouth could hide any juror impairment of constitutional magnitude.[8]

---

[8]     We decline to address defendant's undeveloped and hypothetical assertion that "facemasks and other COVID-19 related measures may have caused the jurors or parties to be unable to comprehend what was happening at one point" based on the trial court's attempt to summarize one witness's testimony in terms that are difficult to decipher on a cold record.

10.

Accordingly, defendant fails to demonstrate that any juror's wearing of a mask during the proceedings deprived him of a fair trial. In the absence of any constitutional violation arising from either defendant's or the jurors' masking, we affirm the judgment.[9]

## II. Remand for Resentencing

In the event we reject his constitutional arguments, as we do, defendant urges us to vacate his sentence and remand for resentencing due to the trial court's purported lack of awareness of its discretion to strike certain enhancements and two postsentencing ameliorative changes in law. Although the People opposed each of defendant's originally briefed grounds for remand, both parties' supplemental briefs (filed at our request) reflect their agreement that remand is warranted based on Assembly Bill 518's amendments to section 654. We, too, agree.[10]

Assembly Bill 518 amended section 654—effective January 1, 2022, several months after defendant's sentencing—to afford trial courts new discretion to decide which sentence to impose, and which to stay, when a defendant has been convicted of different criminal offenses for the same act or course of conduct. (§ 654, subd. (a), as amended by Stats. 2021, ch. 441, § 1; see *People v. Liu* (1996) 46 Cal.App.4th 1119,

---

[9] Given this conclusion, we necessarily reject defendant's corollary claim that his trial counsel rendered ineffective assistance by failing to object to the apparent mask requirements.

[10] Because we remand based on Assembly Bill 518, we need not substantively address defendant's argument for remand based on Senate Bill 81's amendments to section 1385. However, we note that Senate Bill 81's amended requirements expressly apply only to "sentencings occurring after [its] effective date of" January 1, 2022. (§ 1385, subd. (c)(7), enacted by Stats. 2021, ch. 721, § 1.) Therefore, Senate Bill 81 is not retroactive and would not require remand for defendant's August 2021 sentencing. (*People v. Flowers* (2022) 81 Cal.App.5th 680, 686.) Still, its now effective amendments—along with all other currently effective sentencing laws—will apply at defendant's forthcoming resentencing.

We also need not address defendant's other two arguments for remand based on the trial court's purported unawareness of certain sentencing discretion, except to emphasize that "[e]rror may not be presumed from a silent record" such as this one. (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1229 ["remand is unnecessary if the record is silent concerning whether the trial court misunderstood its sentencing discretion"].)

1135.)  Previously,  at the time of defendant's sentencing in August 2021, former section 654 subdivision (a) required the trial court to impose the sentence under the provision of law carrying "the longest potential term of imprisonment."  (Stats. 1997, ch. 410, § 1.)  As amended, section 654 now authorizes trial courts to punish associated crimes under any of the applicable sentencing provisions.

The parties agree, as do we, that Assembly Bill 518's amendments constitute an ameliorative change in law that applies retroactively to this case, which is not yet final. (See *People v. Mani* (2022) 74 Cal.App.5th 343, 379 ["Because Assembly Bill 518 was enacted while defendant's [case] was not yet final and it provides the trial court new discretion to impose a lower sentence, defendant is entitled to its ameliorative benefit."]; *In re Estrada* (1965) 63 Cal.2d 740, 744–745 [absent evidence of contrary legislative intent, ameliorative criminal statutes apply to all cases not final when the statute takes effect]; see also *People v. Jennings* (2019) 42 Cal.App.5th 664, 682 ["For purposes of the *Estrada* rule, a judgment is not final so long as courts may provide a remedy on direct review."].)

All of defendant's convictions in this case arose from the same act of shooting the victim.  In sentencing defendant, the trial court therefore was required to follow former section 654 and impose the sentence for count 5 (§ 26100, subd. (c); § 667, subd. (e)(1)), which carried the longest term of punishment, while imposing and staying the sentences for the remaining four counts.  With the benefit of Assembly Bill 518's amendments to section 654, however, the trial court now has discretion to impose one of the lesser terms of incarceration applicable to counts 1 through 4 and to stay the sentence on count 5.  The present record does not "clearly indicate" that the trial court necessarily would have imposed the sentence on count 5 had it possessed the discretion to choose otherwise. (See *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)  We therefore agree with the parties that remand is appropriate so the trial court may resentence defendant anew with

the benefit of the discretion now afforded by section 654, as amended be Assembly Bill 518.[11]

## DISPOSITION

Defendant's sentence is vacated, and the matter is remanded for resentencing consistent with this decision.  The judgment of conviction is otherwise affirmed.

HILL, P. J.

WE CONCUR:

FRANSON, J.

SMITH, J.

---

[11]    At resentencing, the court may not impose an aggregate sentence that exceeds defendant's original aggregate determinate sentence of 15 years, plus 25 years to life, in prison. (See *People v. Brown* (1987) 193 Cal.App.3d 957, 961.)